DECATUR COUNTY RURAL ELECTRIC MEMBERSHIP CORP. *v.* PUBLIC SERVICE CO. OF INDIANA.

[No. 368A47. Filed May 7, 1970. Rehearing denied May 28, 1970. Transfer denied October 2, 1970.]

*Hubert E. Wickens, Don Hubert Wickens,* Greensburg, *Willet H. Parr, Jr.,* of counsel, Lebanon for appellant.

*Charles W. Campbell, Greg K. Kimberlin,* Plainfield, *G. R. Redding, Virgil L. Beeler* and *Baker and Daniels,* of counsel, all of Indianapolis for appellee.

SULLIVAN, J.—This is a judicial review of a final order of the Public Service Commission of Indiana (hereinafter referred to as the Commission) granting to Appellee, Public Service Company of Indiana, Inc. (hereinafter referred to as PSI), a Certificate of Public Convenience and Necessity pursuant to Section 18(b) of the REMC Act, being Acts 1935, ch. 175, § 18, as amended and as found in Ind. Anno. Stat. § 55-4418(b) (Burns' 1969 Supp.). The order of the Commission, appealed by Decatur County Rural Electric Membership Corporation (hereinafter referred to as REMC) contains a well-stated account of the essential facts. It is, in its pertinent parts, as follows:

"On January 4, 1968, Public Service Company of Indiana, Inc., Petitioner herein filed its verified petition, which was docketed as Cause No. 31677, whereby it seeks a declaration that public convenience and necessity require the construction, ownership, operation, management and control by Petitioner of electrical facilities to be used in the distribution and sale of electric energy to a part of a 40-acre tract of land located in Section 24, Township 9 North, Range 8 East in Decatur County, Indiana, and owned by the Decatur County Community School Corporation, (hereinafter for brevity's sake called 'School Corporation'). This petition was filed pursuant to the provisions of Section 18b of the Rural Electric Membership Corporation Act of Indiana (Burns' § 55-4418).

\* \* \*

"Thereafter, on February 1, 1968, Respondent filed its answer in five paragraphs to said petition admitting or denying parts thereof and setting up affirmative matters in other parts.

\* \* \*

"\* \* \* Prior to the reception of testimony in this cause, the Petitioner and Respondent mutually stipulated and agreed to incorporate, by reference in this cause, the transcript including all testimony and exhibits introduced in evidence in Cause No. 31467 before this Commission, insofar as such testimony was material and relevant to a consideration of the question of public convenience and necessity as prayed for in the petition herein.

\* \* \*

"Together with the evidence and testimony in Cause No. 31467, the evidence shows that the School Corporation owns a tract of land approximately 40 acres in size, half of which lies within 750 ft. of a primary distribution line maintained and operated by Petitioner for over 40 years and the other half of which lies wholly within the territory in which Respondent is authorized to serve. School Corporation is building a school building on the subject tract which the evidence shows lies wholly within that portion of the tract which is within 750 feet of Petitioner's three-phrase primary distribution line. The evidence further shows that School Corporation will require three-phrase service and that Petitioner is currently supplying three-phase electrical energy through a temporary service line to the contractor constructing said school building; that construction service

is temporary and not pursuant to any contract or agreement between School Corporation and Petitioner.

"The evidence further shows that a proposed agreement between the School Corporation and Respondent, which contemplates that Respondent would provide three-phase electrical energy to said School Corporation from an electric line lying solely within Respondent's territory with energy to be taken by School Corporation at a meter which would be located wholly within the territory of Respondent. Under such an arrangement, School Corporation would be required to construct its own facilities from the school building located in Petitioner's territory to a point in Respondent's territory.

"Further evidence was received indicating that School Corporation plans to construct on that portion of its property lying within Respondent's territory an athletic plant requiring electrical energy. The testimony of the witnesses for both parties indicates the desirability of having a single utility serve the entire electric load of this particular customer. Neither Petitioner nor Respondent has given their consent to service by the other in their respective territories.

"The evidence further shows that for Respondent to serve all or any part of the School Corporation property, there will be required an ultimate expenditure requirement by Respondent of approximately $15,000.00, which includes the conversion of approximately 4,000 feet of single-phase line to three-phase; the construction of approximately one mile of new three-phase line; and the acquisition of private right-of-way. Testimony was given which indicated that Respondent has already incurred certain of these expenditures, but there was a conflict in the evidence as to when such expenditures were made; however, it was agreed that the expenditures by Respondent were made with full knowledge that Petitioner intended to serve the school building located in its territory, and certain of such expenditures were made after Petitioner had filed a complaint against Respondent on April 19, 1967, in Cause No. 31467, in which complaint Petitioner prayed that the Respondent desist from such construction until it should be determined by this Commission whether such construction and the purpose therefore was lawful.

"The evidence further showed that prior to the filing of the complaint in Cause No. 31467, Respondent's nearest three-phase service to the School Corporation property was approximately three-quarters of a mile, while Petitioner's nearest three-phase service was approximately 60 feet away.

"The testimony further shows that Petitioner could serve the School Corporation property, for which the declaration is sought in this case, at a cost of approximately $2,000.00, and that, under the present arrangements, the cost to the School Corporation, in order to take electric service from Petitioner, would be approximately $1,000.00 while service from Respondent, as presently contemplated by the School Corporation and Respondent, would cost the School Corporation approximately $7,600.00.

"Further testimony showed that for the immediate future the entire electric requirements of the School Corporation would be consumed and used within Petitioner's territory, and that, if and when the School Corporation constructs its athletic facilities outside of Petitioner's territory, the electrical consumption required by such facilities would be no more than 8 to 10% of the total consumption of the School Corporation on this particular property. It was conceded by witnesses for the Respondent that such use beyond Petitioner's territory of electrical energy would be two or more years in the future.

"The evidence further showed that Petitioner has vast experience in serving over 300 elementary and secondary schools with related athletic facilities, whereas Respondent served only one such facility.

"The evidence further showed that the rates of Petitioner and Respondent compare favorably for service to the facilities presently within and the proposed facilities without Petitioner's territory."

Before stating its findings, the Commission set forth an observation or opinion as follows:

"As the facts demonstrate, the prospective customer in this case owns property both within and without the Petitioner's territory, and the customer proposes, at some time in the future, to be a consumer of electricity outside of Petitioner's territory but that, at present, the entire load is wholly within Petitioner's territory.

"The evidence further discloses that the customer prefers the service of the Respondent and desires the Respondent to serve both the present load of the customer and the future load. In order to effect this desire, there was testimony that the customer was encouraged by the Respondent to construct its own facilities from the building inside Petitioner's territory to a point ouside of Petitioner's territory and into

Respondent's territory so that service could be rendered by Respondent for use within Petitioner's territory, even though the REMC Act precludes service by Respondent to territory within 750 feet of Petitioner's primary distribution line, except where Respondent amends its Articles of Incorporation pursuant to § 5 of the REMC Act.

"The Commission does not look with favor upon arrangements such as this whether practiced by Respondent or any other utility which has the effect of evading the regulatory laws of this State. It is the clear intent and purpose of both the Public Service Commission Act and the REMC Act to prevent competition and prevent the duplication of facilities with the attendant waste of capital and materials. This purpose would not be served if customers were authorized to construct their own facilities outside of one utility's territory and into the territory of another in order to take service. However, the Commission also recognizes that it is not in the public interest to require a customer who has property in the territory of two utilities and who intends to use electric energy in both territories to require that customer to take service from two utilities. The Commission is of the opinion that, in such cases of divided property and dividend use, principles of public convenience and necessity and good utility practice should prevail in determining which of the two potential suppliers should serve the entire electric load of such a customer."

The Commission then made the following findings and order:

"1. That the Commission has jurisdiction over Petitioner and Respondent as well as the general subject matter of this petition.

"2. That School Corporation owns a 40-acre tract of land, half of which lies in Petitioner's territory and half of which lies in Respondent's territory.

"3. That there is a present need for three-phase service to the school building being constructed in Petitioner's territory and such present need is being satisfied by Petitioner.

"4. That by the fall of 1968 there will be in an existing need for permanent three-phase electric service to the School Corporation for the school building located entirely within Petitioner's territory.

"5. That Petitioner is an Indiana corporation and a public utility subject to regulation by this Commission and has

owned, operated and maintained a primary distribution line within 60 feet of the School Corporation property before and since 1935, from which electric service can be rendered to the School Corporation for all such School Corporation electric needs.

"6. That Petitioner has for many years served electric energy to a part of the property now owned by the School Corporation.

"7. That there is projected future need for electric energy to provide lighting to outdoor athletic facilities of the School Corporation, which will be located in the territory of Respondent but on the property owned by the School Corporation.

"8. That said future athletic facilities will be operated in conjunction with the school building now being constructed by the School Corporation.

"9. That Petitioner can and will, without expense to the School Corporation, construct the necessary facilities from the present facilities of Petitioner to the proposed athletic facilities.

"10. That Petitioner is presently willing, ready and able to serve said proposed athletic facilities when and if they are constructed.

"11. That Petitioner can serve said proposed athletic facilities and the present school building with less expense to it than can Respondent.

"12. That Petitioner can serve said proposed athletic facilities with less expense to School Corporation than can Respondent.

"13. That Petitioner had adequate experience and organization to render adequate and reliable service to said athletic facilities and the school building.

"14. That service by Petitioner to the proposed athletic facilities will avoid the duplication of facilities by the Respondent.

"15. That service by Petitioner of the proposed athletic facilities and the school building will render more efficient the existing facilities of Petitioner.

"16. That the entire electric load of School Corporation should be served by one supplier.

"17. That at present and for the immediate future all of the electric demand of the School Corporation will be within territory in which Petitioner has statutory authority to render electric service.

"18. That the plan of service of Petitioner is more economically feasible than the plan of Respondent.

"19. That Petitioner has not given its consent for Respondent to serve in Petitioner's territory.

"20. That Respondent has no authority to supply electrical energy to School Corporation's school building which is located within 750 feet of Petitioner's distribution line and that an amount in excess of 90% of School Corporation's total projected energy load will be consumed in Petitioner's territory.

"21. That present requirements for energy by School Corporation is at the school building which lies wholly within Petitioner's territory.

"22. That public convenience and necessity require the construction, operation, management and control by Petitioner of the required additional electric lines and facilities for the rendering of electric service in the property petitioned for in this cause to School Corporation, its successors and assigns, and it should be and will be so ordered.

"IT IS THEREFORE ORDERED BY THE PUBLIC SERVICE COMMISSION OF INDIANA that it be and there is hereby issued to Public Service Company of Indiana, Inc., a declaration that public convenience and necessity require the construction, ownership, operation, management and control by Petitioner herein of such electric lines and facilities as will be from time to time necessary; and Petitioner is hereby authorized and permitted to construct, own, operate, manage and control such electric lines and related facilities to render service to the following described territory, to-wit: [there follows a legal description of the property, a statement of the effective date of the order, and a direction that the Petitioner pay certain charges for reporting services and legal advertising.]"

While the essential facts involved in this case appear in the Commission's order, an explanation of the background of the controversy will assist in its understanding. In late 1964, the Board of the Decatur County Community Schools decided to build two new schools, one on a 40 acre tract in a rural area in the northern part of the county and the other, the one here involved, on a 40 acre tract in the southern part of the county. Both tracts were bisected by the line dividing

the service territories of PSI and REMC.[1] The north school was built first and on PSI's side of the line. PSI served the school. Construction later commenced on the south school building which is also located on PSI's side of the line.

After being contacted by the Superintendent of the Decatur County Community Schools, the REMC advised the School Board it could serve the south school by extending its lines up to the service territory boundary and by having the school build and own the lines from that point to the school building. During this time an officer and director of REMC was a member of the School Board. PSI advised both the School Board and the REMC that the building was within PSI's territory and that it had the right to serve it, and intended to do so. Despite that information, the REMC acquired the necessary right-of-way on April 11, 1967, and commenced the extension of its lines toward the construction site.

On April 20, 1967, PSI filed a complaint before the Commission (Cause No. 31467), against the REMC to prevent the REMC from serving the school building. In that proceeding[2] the evidence showed that the school planned to build, at some future time, athletic facilities on the west half of the property which was within the territory of the REMC.

---

1. The authority for the service territory of PSI in this case is the statutory authority of PSI to serve any customer within 750 feet of a primary distribution line which existed on the effective date of the REMC Act, or which was thereafter built in territory that was not at the time of such building included in the territory of any corporation organized, or admitted to do business, under the REMC Act. Ind. Anno. Stat. § 55-4403 (n) (Burns' 1969 Supp.). PSI has owned a three-phase primary distribution line along the east side of the School Corporation Land for approximately forty years. Therefore, the line dividing the two territories is 750 feet from this primary distribution line.

The authority for the service territory of REMC in this case is the inclusion of that part of the School Corporation Land that is not within 750 feet of PSI's primary distribution line within the general description of service territory set out in the articles of incorporation of REMC pursuant to the REMC Act.

2. At the hearing which resulted in the order here being reviewed (Cause No. 31677), the parties stipulated the testimony and exhibits which were introduced into evidence in Cause No. 31467 insofar as they are relevant to a determination of public convenience and necessity in Cause No. 31677.

It appeared that the athletic facilities would not require electric service until they were placed in service and the volume of such service would be only a small part of the service required for the complete school corporation. The Commission was of the opinion that a single utility should serve the entire school property. Its order in Cause No. 31467, permitted PSI to continue to serve the contractor but precluded both PSI and REMC from commencing permanent service to the school property until one or the other had obtained authority to serve the entire tract. After the entry of such order PSI filed the petition initiating this proceeding.

The appellant REMC contends that the order of the Public Service Commission is contrary to law and that the Commission should be directed to set aside its order because: (1) The order denies the right of customers to designate where they want service; (2) the order fails to make a finding that REMC was not ready, willing and able to serve; (3) the order constitutes an invasion of the rights of REMC without due process of law; and (4) the order was the result of arbitrary and capricious action.

## CUSTOMER PREFERENCE IS NOT CONTROLLING

The REMC contends that there was evidence before the Commission that in situations where real estate is divided by a line separating the service territories of different utilities a custom exists to the effect that the utility customer may receive electric service at a location desired by him. Such preference would conclusively determine which utility serves the customer. The REMC also contends that there is nothing in law, commission regulations, or in recognized utility practice which warrants taking that right from the customer. If not interfered with by the Commission, says REMC, the right of the customer to determine where his service will be delivered makes resort to the Commission unnecessary.

We reject such contention because it overlooks the clear legislative intent which prompted the REMC Act provision

as concerns disputes such as that now before us. This legislative intent is manifested in § 18(b) of the REMC Act, *supra*, which in our opinion governs the resolution of such disputes. The statute provides:

"(b) Except as provided in the last sentence of this subdivision (b) no person, copartnership or corporation not formed, or admitted to do business in this state, under this act, shall construct, own, manage, or control any system within any territory included in that described in the articles of incorporation of, and to be served by, any corporation formed, or admitted to do business in this state, under this act, to any extent greater than such construction, ownership, operation, management, control or system actually exists on the effective date of this act or the date when such territory is first included in that to be served by such corporation formed, or admitted to do business in this state, under this act, whichever date is later, unless or until the following condition shall have been met, to-wit: The one seeking such construction, ownership, operation, management or control shall first file, or cause to be filed, with the public service commission a petition therefor and obtain from such commission a declaration that public convenience and necessity require the respective construction, ownership, operation, management or control. Before making such declaration, the public service commission shall ascertain whether the proposed construction, ownership, operation, management or control, is to be made or exercised within territory which any corporation formed, or admitted to do business in this state, under this act, or any other corporation or public utility, is at that time, by any former approval, declaration, or franchise by such commission, authorized to serve; if that be the fact, then unless the written consent of each such corporation or utility to the granting of such petition be filed with the commission, the commission shall hold a formal hearing upon such petition after giving the petitioner and each such corporation or public utility, whose territory may be affected, at least ten [10] days' written notice of the time, place, and purpose of such hearing; the petitioner and each such corporation or utility shall be entitled to be heard and shall have process to enforce the attendance of witnesses. * * *"

The legislature has thus declared that generally there shall not be competitive construction, ownership, operation, man-

agement or control by one public utility in the service territory of another public utility unless the sanction of the Public Service Commission is obtained in the form of a declaration by the Public Service Commission that public convenience and necessity require such construction, ownership, operation, management or control. The determination of public convenience and necessity, and thereby the determination of which one of two contesting utilities should serve in a case such as this, involves considerations which transcend the preferences and interests of any individual customer or of the utilities involved. The efficiency and economy of rendering utility service to a particular customer or area ultimately has an effect on all customers being served. It is this broader interest—*the public interest*—which is paramount. Within its prerogative the legislature has determined that it is the Commission, not the private parties involved, which is to determine the public interest.

Evidence of customer preference is relevant in hearings concerning public convenience and necessity, and is therefore a factor to be considered by the Commission in making its determination. It is not the controlling factor, however. A customer may prefer one utility over another for reasons entirely divorced from considerations of good utility practice. Such preference may be entirely incompatible with the public interest. For the reasons stated we hold that in order to legally serve the school building that is located entirely within the service area of PSI the REMC is required by statute to obtain from the Public Service Commission a declaration of public convenience and necessity, notwithstanding any custom which may have previously existed. Having failed to comply with such legislative requirement, the REMC will not be heard on appeal to say that it is entitled to findings by the Commission; (1) that a utility practice existed by which REMC could expect to serve the School from REMC territory, or (2) that by its acquiescence to such practice in other cases and in the North School case,

PSI forfeited its right to petition for service within the territory of REMC, or (3) that PSI was guilty of laches.

## THE COMMISSION WAS NOT REQUIRED TO FIND THAT REMC WAS NOT READY, WILLING AND ABLE TO SERVE

The REMC contends that the order of the Commission should be set aside because the petition filed by PSI which initiated this proceeding does not allege nor is there evidence in the record, nor was there a finding in the Commission's Order that REMC is unable or unwilling to serve the territory involved. The REMC bases this contention on the following language from *Kosciusko County Rural Electric Membership Corp.* v. *Public Service Commission* (1948), 225 Ind. 666, 672, 77 N.E. 2d 572:

> "There was no allegation in the petition nor was there any evidence or finding which would remotely indicate that the appellant REMC is not ready, willing and able to *adequately serve* all customers in this territory at a reasonable rate when the extension of its service is requested; in fact all the evidence was the other way. This was a necessary item of proof in order to warrant the granting by the Commission of this petition, *Chicago, & West Town Rys.* v. *Illinois Commerce Com'n.* (1943), 383 Ill. 20, 48 N. E. 2d 320; *Illinois P. & L. Corp.* v. *Commerce Com.* (1926), 320 Ill. 427, 151 N. E. 236, and the burden of establishing these facts by substantial evidence was on the petitioner. *In re Amsterdam J. & G. R. Co.* (1895), 33 N. Y. Supp. 1009, 86 Hun. 578." (Emphasis supplied)

In the *Kosciusko* case, the Indiana Supreme Court set aside a Commission order of public convenience and necessity for Northern Indiana Public Service Company, (hereinafter referred to as NIPSCO), to serve a real estate subdivision that was located entirely within REMC territory. The REMC had filed a written motion asking the Commission to dismiss NIPSCO's petition on the ground that it wholly failed to allege that REMC was not ready, willing and able to serve the territory in question *as well as, and upon terms and conditions as favorable to the consumer as the petitioner could render*

*such service.* The Commission had overruled this motion and after hearing the evidence granted the certificate of public convenience and necessity to NIPSCO. On appeal, the Supreme Court vacated the Commission's order and remanded the cause for further action.

In contending here that the Commission was required to find that REMC was not ready, willing and able to serve, the REMC has overlooked the fact that the test espoused by the *Kosciusko* case is in terms of *adequacy.* The test is *not* whether REMC was ready, willing and able to serve; rather it is whether REMC was ready, willing and able to *adequately* serve. Adequate means sufficient, or equal to what is required. *Black's Law Dictionary, 4th Ed.* The concept of adequacy suggests a measuring up to a sometimes inexacting standard of what is requisite. To focus on ability or the lack thereof, is not extremely helpful because in most cases any involved utility is *able* to serve in the sense that it has the physical power or capacity to perform. Thus, it would be possible for a utility to be ready, willing and able to serve and yet not be ready, willing and able to *adequately* serve. We, therefore, hold that readiness, willingness and ability are only three of many factors involved in determining adequacy of service and where two utilities seek the right to serve a particular territory, the language of the *Kosciusko* case indicates that a finding of inability or unwillingness or unreadiness to serve is not essential. As in the *Kosciusko* case, the question here is whether REMC is ready, willing and able to *adequately* serve the territory, that is, serve *as well as and upon terms and conditions as favorable to the consumer as the petitioner could render such service.* In the order here reviewed, the Commission determined that PSI was *better* able to serve and as required[3] made detailed findings supporting that conclusion.

3. *Kosciusko County Rural Electric Membership Corp.* v. *Public Service Commission, supra.* See also *General Telephone Company of Indiana, Inc.* v. *Public Service Commission of Indiana* (1958), 238 Ind. 646, 150 N.E. 2d 891.

Subsequent to the decision in the *Kosciusko* case, our Supreme Court decided *Public Service Commission of Indiana* v. *Indiana Telephone Corp.* (1957), 237 Ind. 352, 146 N. E. 2d 248, in which a competing utility requested certification to serve an area already within the territorial authority of a different telephone utility. That decision lends support to our assessment of the meaning of the holding in the *Kosciusko* case. In the *Indiana Telephone Corp.* case, the Public Service Commission had denied the petition and authorized service in the disputed area by the utility holding the original certificate of territorial authority. Upon review a county circuit court entered judgment upon its finding that public convenience and necessity required that service be rendered by the "invading" petitioner. Such finding and judgment was held by the Supreme Court to be an invasion of the sole province of the Public Service Commission.

The Supreme Court further specifically noted that the Commission had made a finding that the utility holding the original certificate of territorial authority was ready, willing and able to serve the disputed area.

Such finding, under the interpretation of the *Kosciusko* case urged here by REMC, would virtually require denial of the request by the "invading" utility for authority to serve. However, the Supreme Court there noted that the evidence before the Commission was as follows:

"* * * The Indiana Company [The Petitioner] was able to render the service with more convenience, speed and economy than the Co-op. [The utility holding the certificate of territorial authority for the disputed area]. The Indiana Company was able to do this through the Shoals Exchange, the center of community interest for the inhabitants of the territory. This could be done without a toll charge. On the other hand, the Co-op. could provide telephone service with the community of interest only by a circuitous and lengthy route involving delay and probable toll charges." 237 Ind 352, at 365;

and thereupon remanded the cause to the Public Service Commission for further consideration with reference to the matter

of which utility of the two was *better* able to serve the disputed territorial area.[4] We, therefore, hold that REMC's contention that the order is invalid without a finding of REMC's *inability* to serve is plainly in error.

## COMMISSION ORDER DID NOT VIOLATE APPELLANT'S DUE PROCESS RIGHTS

Appellant also asserts in its brief that:

"THE COMMISSION ORDER CONSTITUTES AN INVASION OF PROPERTY RIGHTS OF APPELLANT (REMC) WITHOUT DUE PROCESS OF LAW

"1. Franchise rights of a utility are property rights and as such are entitled to the protection of law. The grant of a franchise creates a binding contract and is entitled to protection under the statutes and Constitutions of the United States and of the State of Indiana. (citations omitted)

"2. The REMC Act provides such protection to the REMC, and gives adequate defense to the public if the REMC is not ready, able and willing to serve its area. The burden of establishing such facts was on Petitioner (PSI). It must be met by substantial evidence.

KOSCIUSKO COUNTY, ETC. V. PUBLIC SERVICE COMM. (1947), 225 Ind. 666, P. 673.

"3. It was also held in the Kosciusko case that an order such as this is an invasion of the property rights of REMC.

'In our opinion such an order granted by the Commismission is an invasion or encroachment on the rights of

---

4. Following remand, the Commission concluded and found as follows:

"15. That taking into consideration, the community interest, convenience to the public, the financial effects upon both the Co-Op. and the Company, the investment in the disputed area by both the Co-Op. and the Company and the charges for service to the public by each utility concerned, public convenience and necessity require telephone service in the disputed area through the Shoals exchange of the Company, and the Company should be authorized to render telephone service in the disputed area, as a second telephone utility, along with the Co-Op." 132 Ind. App. 610 at 619.

The order granting such authority was affirmed by this Court in *Daviess-Martin Co. etc.* v. *Public Service Commission* (1962), 132 Ind. App. 610, 174 N.E. 2d 63.

Appellant if the same is granted arbitrarily upon findings not supported by substantial evidence.'

KOSCIUSKO COUNTY, ETC. V. PUBLIC SERVICE COMM. (1947), 225 Ind. 666, P. 676.

"Due process of law requires the Commission to base an order on facts found which in turn must be based on substantial evidence. Findings must be supported on substantial evidence and an order is void if there is insufficiency or lack of evidence to support findings.

PENNSYLVANIA R. CO. V. TOWN BD. OF TRUSTEES, EDINBURG (1966), 139 Ind. App. 216, 218 N. E. 2d 171, 173, 174."

We assume that appellant's contention is that in order to obtain a declaration of convenience and necessity from the Commission there existed a burden upon PSI to introduce substantial evidence of probative value at the hearing that REMC was not ready, able and willing to serve the area and that the Commission was required to make a finding of REMC's inability to serve, and that since these alleged requirements were not complied with, the order of the Commission constitutes a deprivation of property without due process of law. We deem this to be merely a variation of the previously stated argument that a finding of inability to serve is essential and we reject it for the previously stated reasons.

### The Commission Order is Not the Result of Arbitrary and Capricious Action

Appellant finally contends that the Commission failed to pass upon the real issue, i.e., whether REMC was ready, able and willing to provide service and that the Commission, in fact, entered an adverse order on matters which were not in issue, said order therefore being arbitrary and capricious. We find no merit in this contention.

We have held that whether REMC was ready, able and willing to serve was *not* the issue before the Commission and no further discussion of this contention is warranted. Fur-

ther, we cannot say that the finding of the Commission to the effect that petitioner, PSI, was better able to serve the disputed area is erroneous as a matter of law. Said finding was supported by substantial evidence of probative value and is, therefore, binding upon us. *Daviess-Martin County Rural Telephone Corp.* v. *Public Service Commission* (1962), 132 Ind. App. 610, 174 N. E. 2d 63. After a thorough examination of the record we conclude that no rights of the Appellant REMC have been affected except as provided by law and that the Commission's order was entered in conformity to law.

For the reasons stated the order of the Public Service Commission is affirmed. Costs are hereby assessed against the appellant REMC.

Lowdermilk, C.J., Carson and Cooper, JJ., concur.

NOTE.—Reported in 258 N. E. 2d 180.