UNITED RURAL ELECTRIC MEMBER-
SHIP CORPORATION, et al.,
Appellants,

v.

INDIANA & MICHIGAN ELECTRIC
COMPANY, et al., Appellees.

No. 2–485 A 116.

Court of Appeals of Indiana,
Third District.

Nov. 30, 1987.

Rehearing Denied Jan. 14, 1988.

David S. Richey, Parr, Rickey, Obremskey & Morton, Indianapolis, Stanley H. Matheny, Matheny, Michael, Hahn & Bailey, Huntington, for appellant United Rural Elec. Membership Corp.

Milford M. Miller, Edward J. Liptak, Livingston, Dildine, Haynie & Yoder, Fort Wayne, for appellee Indiana & Michigan Elec. Co.

Langdon D. Bell, Judith B. Sanders, Bell & Bentine Co., L.P.A., Columbus, Ohio, for appellee General Motors Corp.

HOFFMAN, Judge.

Appellant United Rural Electric Membership Corporation (United) is a distribution cooperative engaged in the retail sale of electricity in various counties in northern Indiana. Appellee Indiana & Michigan Electric Company (I & M) is an investor-owned utility also serving portions of northern Indiana. United is appealing a December 1984 order of the Public Service Commission wherein the Commission awarded I & M a service area which includes a 960–acre site acquired by General Motors Corporation (GM) for construction of a truck assembly plant.

In 1980 the Indiana General Assembly enacted P.L. 69–1980 (IND.CODE § 8–1–2.3–1 *et seq.*) in order to quell the rising number of territorial disputes between electricity suppliers. It is undisputed that on June 28, 1982 United and I & M filed a joint petition with the Commission proposing the 960–acre tract remain within the service area of United, the traditional boundary. Pursuant to the statutory scheme, a public hearing was held on the joint petition on September 1, 1983. However, the Commission failed to enter an order on the petition.

On August 28, 1984 I & M filed a petition for modification of the service area with the Commission. Several parties, including GM, were allowed to intervene on the side of I & M. They are now appellees to this action. A petition to intervene by Wabash Valley Power Association, Inc., (WVPA), a supplier of electricity to United, was denied by the Commission. Although, WVPA did not appeal that decision, it was allowed to intervene as an appellant in this cause pursuant to IND.CODE § 8–1–2.3–3.

After a public hearing spanning from October 29, 1984 to November 7, 1984, the Commission issued an order. The December 10, 1984 order concluded *inter alia* that I & M's petition "shall be and is hereby approved, as consistent with 'good utility practice' and 'the public convenience and necessity,' and I & M shall be and is hereby assigned the area of the proposed General Motors Corporation site as I & M's assigned service area." This appeal ensued.

As broadly restated, the issues presented for review are:

(1) whether IND.CODE § 8–1–2.3–3(f) requires the Commission to approve an agreed petition within 12 months of its submission;

(2) whether IND.CODE § 8–1–2.3–3(g) requires the Commission to act on boundary disputes by March 1, 1983, thus I & M's petition was not timely;

(3) whether the equidistant method of determining the boundary lines found in IND.CODE § 8–1–2.3–3(d) was the proper method in the present case;

(4) whether the Commission had jurisdiction to entertain a "petition to modify" when the provisions of IND. CODE § 8–1–2.3–6 are inapplicable to the present case;

(5) whether sufficient evidence supports the Commission's decision;

(6) whether the Commission could properly determine which of two utilities could better serve the area's needs;

(7) whether the Commission abused its discretion in denying United's request for a continuance to complete discovery; and

(8) whether the Commission's decision forbidding intervention by WVPA was arbitrary and capricious and unduly prejudicial.

The majority of United's issues hinge upon the proper interpretation of certain sections of P.L. 69–1980.

■ United first alleges that while the Commission made no specific order approv-

ing United as the electricity provider for the disputed area, the agreed petition should be deemed as accepted by the Commission as of 12 months after its submission pursuant to IND.CODE § 8–1–2.3–3(f). United contends that IND.CODE § 8–1–2.3–3(f) requires the Commission to enter an order approving the agreed petition within 12 months; consequently, the Commission was without jurisdiction to entertain I & M's petition to modify the service area which was filed on August 28, 1984.

IND.CODE § 8–1–2.3–3(f) provides that utilities can submit to the Commission petitions and maps depicting proposed service areas requesting approval of the areas. The statute also states "[i]f the commission finds that the proposed service areas comply with this chapter, it shall issue an order within twelve (12) months of the filing of the petition and related maps, approving and assigning the service areas as designated on the prepared maps."

In *Hancock Cty. Rural Elec. v. Greenfield City* (1986), Ind.App., 494 N.E.2d 1294, this Court determined that another portion of the Act, IND.CODE § 8–1–2.3–6, requiring a ruling by the Commission within 90 days was directory and not mandatory. A mandatory construction was rejected because 1) the statute did not specify any adverse consequences for the failure to act within the 90–day period, 2) the time period did not go to the essence of the statute, and 3) to hold otherwise would frustrate the legislative purpose. *Hancock Cty., supra,* 494 N.E.2d at 1296.

Analyzing IND.CODE § 8–1–2.3–3(f) in light of the *Hancock Cty.* decision, it follows that the 12–month period was directory, not mandatory. The statute does not specify any adverse consequences for the failure to act within the allotted time frame. The 12–month period did not go to the essence of the statute. Illustrative of the non-essential nature of the time period were the 1982 amendments to IND.CODE § 8–1–2.3–3(f) extending dates contained in P.L. 9–1980. *See* P.L. 71–1982, Sec. 1. Finally, a determination that the time period is mandatory would frustrate the purpose of the Act. The legislature empowered the Commission with authority to approve service area boundaries. There appears nowhere in the Act an alternative or diminution in that authority if the temporal goals are not met.

Further, United's argument ignores the portion of IND.CODE § 8–1–2.3–3(f) which states that the Commission shall enter an order approving the service area "if the Commission finds that the proposed service areas comply with this chapter." The statute allows the Commission some discretion. The legislature did not relegate the Commission to a position of automatically approving petitions submitted by the utilities. Because the time frame in IND.CODE § 8–1–2.3–3(f) is not mandatory but merely directory, the Commission was not required to approve the joint petition and the Commission had jurisdiction to act on I & M's petition.

Next United argues that even if IND.CODE § 8–1–2.3–3(f) does not require the Commission to approve the joint petition, IND.CODE § 8–1–2.3–3(g) does require such action. IND.CODE § 8–1–2.3–3(g) provides:

"If two (2) or more adjacent electricity suppliers cannot agree upon the boundary line or lines between their respective proposed service areas on or before July 1, 1982, or such other date as the commission may determine, but in any event on or before March 1, 1983, the commission on its own motion or upon petition of one (1) of the electricity suppliers shall hold a public hearing regarding the location of the boundary line or lines, after publication of notice of the hearing at least ten (10) days before the hearing in the county or counties in which the boundary line or lines are located. The commission shall determine the boundary line or lines based as nearly as practicable upon a line equidistant between the existing electric distribution lines of the adjacent electricity suppliers, consistent with good utility practice and public convenience and necessity. The commission shall issue an order determining the boundary line or lines and assigning the

service areas, and shall direct the parties to file with the commission maps showing such assigned service areas. If the commission determines that the maps comply with its order, it shall issue a supplemental order approving the assigned service areas as designated on the maps."

United takes the position that section (g) does not allow the utilities to disagree or file a petition with the Commission disagreeing with the boundaries after March 1, 1983. Hence, according to United the statute mandates action by March 1, 1983 and the Commission had no choice but to approve the joint petition because it was the only petition pending before the Commission on that date.

When construing any statute, a determination of legislative intent is imperative and that intent should be given deference whenever possible. Intent may be discerned from a consideration of the goals and the policy underlying the statute. *Matter of Middlefork Watershed Conserv.* (1987), Ind.App., 508 N.E.2d 574, 577. The task of construing the present act is facilitated by the legislature's declared policy found in IND.CODE § 8–1–2.3–1 which provides:

"It is declared to be in the public interest that, in order to encourage the orderly development of coordinated statewide electric service at retail, to eliminate or avoid unnecessary duplication of electric utility facilities, to prevent the waste of material and resources, and to promote economical, efficient, and adequate electric service to the public, the currently unincorporated areas of Indiana shall be divided into designated geographic areas within which an assigned electricity supplier has the sole right to furnish retail electric service to customers."

Even though a statute on its face is clear, a court must necessarily determine whether a given set of circumstances is encompassed within the bounds of the statute. *Allen Co. Dept. of Pub. Welfare v. Ball Mem. Hosp.* (1969), 253 Ind. 179, 184, 252 N.E.2d 424, 427, quoting Crawford, *Statutory Construction* § 261, p. 516.

The court must avoid a strict interpretation which may produce an absurd or mischievous result. *Allen Co., supra.*

United is mistaken in interpreting IND. CODE § 8–1–2.3–3(g) to preclude a petition after March 1, 1983. The statute specifically addresses the proper course of action when the parties disagree to the boundaries after March 1, 1983. After that date, the Commission "shall hold a public hearing regarding the location of the boundary line or lines." Any other finding would lead to a mischievous result. Additionally, the stated purpose of the Act "to promote economical, efficient, and adequate electric service to the public," supports this interpretation of the statute. *See,* IND.CODE § 8–1–2.3–1.

In conjunction with the previous argument United contends that because the time limitations in IND.CODE § 8–1–2.3–3(g) bar the Commission's actions after March 1, 1983, the statutory provision of IND.CODE § 8–1–2.3–3(d) controls. In relevant part IND.CODE § 8–1–2.3–3(d) states:

"Until otherwise agreed upon between electricity suppliers or ordered by the commission under section 3(g) of this chapter, the boundaries of the assigned service area for each adjacent electricity supplier ... shall be set as a line equidistant from its existing electric distribution lines and the nearest existing electric distribution lines of any other electricity supplier...."

United's attempt to invoke the equidistant point as the sole method of calculating the boundary must fail. United claims that the equidistant point must be used unless the parties agree to a different boundary or unless IND.CODE § 8–1–2.3–3(g) controls. Again, United assumes that the Commission was without authority to rule on the petition to modify the boundaries because the action was after March 1, 1983. This argument has been determined otherwise.

Next, United complains that I & M's petition for a "modification" acknowledges that the boundary had been established in United's favor, and that the Act does not

provide for modification except in IND. CODE § 8–1–2.3–6. The parties agree that section 6 does not apply in this case. IND. CODE § 8–1–2.3–3(h) provides that once established by that section, the boundaries cannot be changed except according to the provisions of section 6. However, the boundaries were not established in the present case until the Commission's order of December 10, 1984. Given that there was no established boundary to modify, designating the petition as one "to modify" must address the former agreed petition, not the boundaries.

■ United questions the sufficiency of the evidence, as well as the Commission's authority to determine which of two utilities could better serve the area's needs. In reviewing an administrative proceeding, the Court must view the record of proceedings in a light most favorable to the administrative decision and the evidence will not be reweighed. *Maxey v. Board of Zoning Appeals* (1985), Ind.App., 480 N.E.2d 589, 595. Review of an administrative agency's decision is limited to whether the decision is arbitrary, capricious, an abuse of discretion, in excess of statutory authority, or unsupported by substantial evidence. *St. Mary's Med. Ctr. v. Cty. Dept. of Welfare* (1986), Ind.App., 495 N.E.2d 773, 774–775.

■ United's first argument directed to the evidence is presented in a unique posture for an appellant. United argues that the Commission was presented with sufficient evidence to uphold a decision in its favor. Even if true, the role of an appellate court prohibits such an assessment. *See, Maxey, supra.* Viewing the evidence in the proper light, the Commission concluded that I & M had adequate generating facilities with current and future capabilities. Additionally, I & M possessed the ability to maintain and repair the electric supply lines, and the requisite experience, organization and equipment to serve a large-load customer. Conversely, the Commission questioned United's ability to provide economical, efficient, and adequate service to the disputed area. The precarious financial condition of United's power supplier, WVPA, was a major considera-

tion. The Commission expressed concern that United depended upon outside contractors of unknown abilities for electricity supply and maintenance.

United's second argument directed to the evidence charges that the Commission erred in determining which of two utilities could better serve the area's needs, rather than determining the adequacy of the service. The record demonstrates that the Commission considered the relative abilities of United and I & M to adequately serve the area. The GM facility required reliable, predictable, long-term electric energy at a transmission level which far surpassed United's current or predicted future capabilities.

In an analogous case, *Decatur Co. REMC v. PSI.* (1970), 146 Ind.App. 699, 258 N.E.2d 180, this Court reviewed a Commission decision where the crucial issue was which of two utilities could adequately serve a large-load customer, a school. This Court stated:

"[T]he question here is whether REMC is ready, willing and able to *adequately* serve the territory, that is, serve *as well as and upon terms and conditions as favorable to the consumer as the petitioner could render such service.* In the order here reviewed, the Commission determined that PSI was *better* able to serve and as required made detailed findings supporting that conclusion. (Emphasis in original.) (Footnote omitted.) 146 Ind.App. at 712, 258 N.E.2d at 188.

Specifically at issue was a determination whether the Commission's order awarding the service area to PSI was invalid because the Commission did not find that the REMC was incapable to serve the area. 146 Ind.App. at 714, 258 N.E.2d at 189. It was of no moment that the evidence demonstrated an ability by the REMC to provide service. 146 Ind.App. at 712, 258 N.E.2d at 188.

While a customer's preference for one utility over another cannot be determinative of the service areas, as a practical matter the needs of the customer at favorable terms gives meaning to "public convenience and necessity," and "good utility

practice." *Cf. Daviess–Martin Co. etc. v. Pub. Serv. Comm.* (1961), 132 Ind.App. 610, 174 N.E.2d 63 (Court sustained Commission's order awarding telephone service area to "invading" company because more direct and less expensive service available through "invading" utility, even though area would normally be served by other party.)

In summary, substantial evidence supports the Commission's order granting I & M the service area in question. Also, the Commission's decision was based upon an assessment of the utilities' capabilities of adequately serving the area. The Commission need not find that one utility is incapable of providing service, as United's argument suggests. A decision by an administrative body is presumed correct, due to its expertise in the subject area. *See Maxey, supra* 480 N.E.2d at 592.

Turning now to the procedural questions raised by United, United claims the Commission abused its discretion in denying United a continuance for alleged failure by I & M to comply with discovery orders. The choice of sanctions to be imposed for a failure to comply with a discovery order lies within the discretion of the trial court, or in this case the Commission. *See Breedlove v. Breedlove* (1981), Ind.App., 421 N.E. 2d 739, 741–742.

United complains that the Commission failed to grant a continuance to allow United to pursue further discovery. The request was made on November 7, 1984 on the final day of the hearing on I & M's petition. The Commission did not abuse its discretion in refusing United's request for a continuance.

Finally, United and WVPA complain that the Commission's decision forbidding intervention by WVPA in the present action was arbitrary and capricious and unduly prejudicial. In denying the petition to intervene the administrative law judge found that "wholesale rates and the adequacy of wholesale supplies are not, and never have been, issues in this cause." Representatives of WVPA testified regarding WVPA's ability to supply power to United. Although claiming prejudice, neither United nor WVPA argue that other evidence could have been presented at the hearing had the Commission not made its initial ruling on WVPA's status and the issues. That decision will not be reversed unless it is shown to be an abuse of discretion and harmful or prejudicial. *Developmental Disabilities v. Metro. Dev. Com'n* (1983), Ind.App., 455 N.E.2d 960, 965. *Cf. Hurt v. Polak* (1979), Ind.App., 397 N.E.2d 1051, 1053. Considering that WVPA's representatives testified at the hearing and considering that the appellants' briefs do not indicate the existence of additional facts which could have been presented to the Commission, United and WVPA failed to demonstrate prejudice resulting from the Commission's decision.

■ Along with this argument United asserts that the Commission committed error in allowing into evidence any testimony regarding WVPA's ability to supply United with power after the Commission's initial ruling that such evidence was irrelevant. As an administrative body the Commission is not strictly bound by rules of trial procedure. *Margrat, Inc. v. Ind. State Bd. of Tax Com'rs* (1982), Ind.App., 448 N.E.2d 684, 685. United's position is untenable in that it is essentially asserting that the Commission should have made a decision on the boundary without hearing all available evidence on the issue. The Commission did not err in allowing the testimony into evidence.

Accordingly, there being no finding of error the Commission's decision is affirmed.

Affirmed.

RATLIFF, C.J., and STATON, J., concur.