301 N.E.2d 359 (1973)
METROPOLITAN BOARD OF ZONING APPEALS OF MARION COUNTY, Second Division, et al., Appellants,
v.
Paul V. RUMPLE, Appellee.
No. 973S192.
Supreme Court of Indiana.
September 27, 1973.
Harold H. Kohlmeyer, Jr., Corp. Counsel, Arthur H. Northrup, City-County Legal Division, Indianapolis, for appellants.
*360 Paul V. Rumple, Max Rynearson, Rynearson & Rumple, Indianapolis, for appellee.

ON PETITION TO TRANSFER
DeBRULER, Justice.
This case first originated by a petition, filed by appellee with the Metropolitan Board of Zoning Appeals, which requested a use variance to permit a residentially zoned house and lot to be used for "professional offices and business use". The Board unanimously denied the requested use variance. The appellee sought review of this decision pursuant to the then existing I.C. XX-X-X-XX, being Burns § 53-974, in the Marion Superior Court, Room 6, the Honorable Rufus C. Kuykendall, Judge, presiding; and that proceeding resulted in a judgment reversing the decision of the Board. The Board appealed to the then existing Appellate Court of Indiana which first issued an order and opinion at 274 N.E.2d 727, remanding the cause to the trial court for special findings of fact and conclusion of law pursuant to TR. 52(A)(2), I.C. 1971, 34-5-1-1, and upon receipt of those findings turned to the merits of the appeal and unanimously affirmed by opinion at 276 N.E.2d 220. The Appellate Court denied rehearing with one judge dissenting with opinion at 277 N.E.2d 921. The petition of the Board to transfer is now granted.
Appellee was seeking, by his petition, a variance of "use", to permit him to use a private residence and lot for a law and business office with off-street parking and a sign in the yard. The house and lot are located on Parker Avenue, one-half block South of the intersection of Parker and 38th Streets in the City of Indianapolis. The city block in which the property is located is bisected by an alley which parallels 38th Street and which forms the North boundary of the said property. This alley runs behind the lots which front on 38th Street and forms a natural boundary between those 38th Street lots which are used and zoned for business and commercial purposes and the lots South of the alley along Parker Avenue including the subject property, which are used and zoned for private residential purposes. The maps and other evidence before the Board showed that this entire area including 38th Street was formerly a residential area, but that more recently 38th Street had become a highly commercialized and volatile street for development carrying an enormous traffic load.
At the hearing before the Board, the petitioner sought to persuade the Board in his favor by showing the proximity of the subject property to the commercial lots to the North and by showing that his specific use proposals would be minimally disruptive of the existing zoning scheme and would in several respects enhance the neighborhood. No residential neighbors appeared against the petition, and in fact many were shown to support it. The Executive Director of the Metropolitan Plan Division strongly opposed the petition, and appeared by counsel at the hearing and presented a written report and made argument against the petition. That report was received by the Board and at the hearing the following exchange occurred between the Chairman of the Board and the petitioner about the report:
"THE CHAIRMAN: You are probably familiar with the staff comments?
MR. RYNEARSON: Yes.
THE CHAIRMAN: It has been the policy of this Board for the petitioner to show a particular hardship on this piece of property. The comments by the Metropolitan Plan Commission are quite long and quite lengthy, and in order to persuade the Board, you will have to answer a majority of these comments the Board has directed to you.
MR. RYNEARSON: Mr. Rumple, who is my partner, has gone through these in detail, and would like to answer on the staff comments."
*361 The Staff Report contained the following description of the history of the subject property and the grounds upon which the staff recommended denial of the variance:
"1. Several years ago due to considerable pressure for business use on East 38th Street, the staff was requested to make a lot by lot inspection of the street in order to stabilize the residential areas and propose more orderly business expansion. Since most of the business proposals were being requested by the variance system, the staff met with the Board of Zoning Appeals, with various property owners of the area as well as with the Plan Commission. It was agreed upon by all concerned that no attempt would be made to preclude business uses in those areas already highly penetrated by business uses and beyond preservation. It was further agreed upon that the stable residential areas should be saved.
2. Most of the pressure for business conversions were across from the Meadows apartments between Oxford Street and Sherman Drive. There were several professional offices in the area inter-mixed with stable residential lots.
3. The major problems to the area were the inadequate size of most lots for proper development into business uses, and the adverse effect upon 38th Street traffic with business access to each property.
4. After careful study, this area was proposed by the staff as a business office district. Performance standards were developed to control either conversion of existing residential structures or development of new business structures. These performance standards provided a basis for sound business office development by requiring screening, adequate parking, setbacks and ingress and egress conformance that would be compatible with adjacent residences.
5. To date these policies have not been violated. There are a considerable number of lots available for office use in the Oxford-Sherman area. It is undesirable and unnecessary to allow business encroachment into the residential neighborhood.
6. It is imperative that the alley south of the lots fronting on 38th Street be held as the commercial boundary. It is the only logical physical boundary that can be maintained.
7. The use of this lot poses serious problems to the lots south and the lots across the street and would, if granted, promote a business string on a local neighborhood street.
8. There is nothing peculiar about this lot to substantiate a business use. It is a lot located on a residential side street along with other residential uses. Business office use as well as retail uses have been located and propose to continue to locate in designated areas along 38th Street.
9. The use is in conflict with established uses in the area and with the Comprehensive General Land Use Plan."
The attorney for the Executive Director added the following explanation of the opposition of the Planning Division in the following statement made orally to the Board at the hearing:
"In talking about extending a commercial boundary, there is always one lot next to the dividing line; and there is always a tremendous amount of pressure to add just one more lot to that commercial zoning, and then one more lot on down, and on down. Actually what has happened on Keystone, I too am familiar with that attorney's office on the west side of the street, in a pretty white house, and I live not too far from there. And I also have been familiar in the last two or three years of commercial developments going into those houses on Keystone, and for that very reason the Staff *362 takes a very strong position, that once you allow a variance to go south from a natural boundary, such as an alley, then all the lots south will go commercial and until they reach another natural boundary, probably 30th Street, Parker Street will go on south too. This is the very type of creeping process that the Staff feels it must hold the line against.
Also, the present houses in this neighborhood are moderately priced, generally frame, some brick homes, where a person earning 5 or $6000 could meet a small mortgage or buy on contract. A number of these houses were sold in the past three or four years, in spite of the overall change in the neighborhood, these houses are being bought and sold as residences, and will continue to be bought and sold as such, if you don't start this creeping process by commercializing these residences, even though lawyers and doctors offices are the better type of commercial use."
The petitioner attempted to rebut the adverse report of the staff and the statements of counsel with his own statement to the effect that the grant of his variance would not necessarily cause future erosion of the boundary line between the commercial and residential neighborhoods, since the Board had the power to deny future use variances having that effect. Apparently the Board, upon consideration of this contention along with the rest of the data before it, was not persuaded that this use variance should be granted.
Pursuant to the command of the trial court writ of certiorari, the Board filed its return. Indiana Code 1971, XX-X-X-XX, being Burns § 53-978, sets out the content of such returns as follows:
"The return to the writ of certiorari by the board of zoning appeals must concisely set forth such facts and data as may be pertinent and present material to show the grounds of the decision appealed from.
The return must be verified by the secretary of the board."
The above report of the staff and the statements of counsel in support of a negative determination by the Board on this petition were included in the return made by the Board to the Superior Court of Marion County, Room 6. It was clearly "facts and data ... pertinent ... to show the grounds of the decision appealed from." As such, it should have been considered along with the maps, drawings, and evidence supplied by the petitioner by the trial court and by the Appellate Court in reviewing this case. It appears to have been ignored by both.
In this case, the court functions to review an administrative decision. The decision, like that in the recent zoning cases cited below, was against the party seeking a use variance. The Board denied the requested variance since the party seeking the remedy had failed to persuade the Board by its presentation of the facts, that:
"1. The grant will not be injurious to the public health, safety, morals, and general welfare of the community.
2. The use or value of the area adjacent to the property included in the variance will not be adversely affected.
3. The need for the variance arises from some condition peculiar to the property involved and does not exist in similar property in the same zone.
4. The strict application of the terms of the ordinance will constitute an unusual and unnecessary hardship if applied to the property for which a variance is sought.
5. The grant of the variance does not interfere substantially with the metropolitan comprehensive plan adopted pursuant to sections 31 through 37 of this act." I.C. 1971, XX-X-X-XX, being Burns § 53-969.
*363 In Kunz et al. v. Waterman et al. (1972), Ind., 283 N.E.2d 371, we affirmatively adopted the test as articulated in the case of Metropolitan Board of Zoning Appeals v. Standard Life Insurance Co. (1969) Ind. App., 251 N.E.2d 60, to be applied when reviewing cases of this type. There we said:
"The Court's role in reviewing the findings of the zoning board was succinctly and correctly stated by the Appellate Court in Metropolitan Board of Zoning Appeals v. Standard Life Insurance Co. (1969), Ind. App., 251 N.E.2d 60, in the following words:
`It must be emphasized that the board, as an administrative body, presumably expert in the land use problems of its particular jurisdiction, has wide discretion in the granting or denying of zoning variances. Pursuant to existing and binding law, in reviewing any such decision a court may not substitute its discretion for that of the board. .. . It also must be emphasized that this case concerns the denial of a variance by the board and that the standards for judicial review in such case are significantly different from the standards for judicial review of a board decision which grants a variance... . In order to reverse an order of a board which, as here, denies a variance the reviewing court must find that each of the five statutory prerequisites has been established as a matter of law, giving wide construction to the total evidence and resolving all doubts in favor of the board's determination... . In other words, the evidence supporting each prerequisite must be such that no reasonable man could fail to accept that prerequisite as proved. 251 N.E.2d at 61."
The record before the Board is identical to the record before the trial court, in that no additional evidence was received by the trial court. Applying the above test to the total evidence before the Board, including as it does, the report of the staff of the Metropolitan Planning Commission set out above, and the statements given by the counsel for the Planning Commission, no court could possibly say that any of the five statutory determinations were established unequivocally as a matter of law. The Board's denial of this variance was not illegal. The judgment of the trial court is reversed and the Board's decision is ordered affirmed.
ARTERBURN, C.J., and GIVAN, and PRENTICE, JJ., concur.
HUNTER, J., dissents without opinion.