SPEEDWAY BOARD OF ZONING AP-
PEALS, Speedway, Indiana, John R.
Sneyd, Chairman, Leonard R. Czen-
kusch, Member, Clarence Woodward,
Member, Harvey Walter, Member, Fred
Seyphers, Member, Archie B. Pace, Re-
monstrator, Robert L. Ferguson, Re-
monstrator, Michael Barrett, as Chair-
man of Board of Trustees, Speedway
United Methodist Church, Remon-
strator, Peter Hahn, Remonstrator, Nan-
cy Budd, Remonstrator, and Keith I.
Thomas, as Associate Planner, Metro-
politan Department of Development Di-
vision of Planning and Zoning, Appel-
lants-Defendants,

v.

George T. POPCHEFF,
Appellee-Plaintiff.

No. 2–1276A460.

Court of Appeals of Indiana,
Fourth District.

Feb. 19, 1979.

David R. Rees, Asst. Corp. Counsel, Roy F. Spilker, Indianapolis, for appellants-defendants.

William T. Lawrence, Indianapolis, for appellee-plaintiff.

CHIPMAN, Presiding Judge.

Plaintiff-appellee George T. Popcheff sought the subject zoning variance in order to establish and maintain a law office in the first floor of the existing residential structure located at 5023 West Sixteenth Street in Speedway, Indiana. After Popcheff's Petition for Variance was denied by defendant-appellant Speedway Board of Zoning Appeals (Board), Popcheff filed a Petition for Writ of Certiorari pursuant to *Ind.Code* 18–7–2–76 in the Marion County Superior Court. The Superior Court reversed the Board's denial and granted Popcheff's Petition for Variance. The Board appeals the Superior Court's decision and presents the following issues for our review:

(1) Did the five statutory prerequisites for granting a variance exist as a matter of law?

(2) Was improper and prejudicial evidence received by the Board which prevented a fair and impartial hearing?

In light of our negative response to both questions, we reverse the Superior Court and affirm the Board's denial of Popcheff's Petition for Variance.

Our disposition of this appeal is tempered by an awareness that the Board, as an administrative body, is presumably expert in the land use problems of its particular jurisdiction. Thus, the Board must be afforded wide discretion in the granting or denying of zoning variances. *Metropolitan Board of Zoning Appeals v. Standard Life Insurance Company,* (1969) 145 Ind. App. 363, 251 N.E.2d 60, 61. In reviewing the Board's decision, the trial court may not substitute its own judgment. *Board of Zoning Appeals of Whiting v. McFadden,* (1975) Ind.App., 337 N.E.2d 576, 578. In order to reverse an order of the Board which as here, *denies* a variance,[1] the re-

---

1. We emphasize that this case concerns the denial of a variance by the Board and that the standards for judicial review in such cases are significantly different from the standards for judicial review of a Board decision which grants a variance. *Compare R. J. Realty, Inc. v. Keith,* (1969) 145 Ind.App. 314, 250 N.E.2d 757 *with Standard Life, supra.* We stress that we do *not* merely seek to determine whether there is substantial evidence of probative value to support the Board's denial. *McFadden* at 579. Thus, appellant correctly contends that references in the Superior Court's order reversing the Board to the "substantial evidence of probative value" standard constitute error. *Speedway Board of Zoning Appeal of Marion County v. Standard Concrete Materials,* (1971) 150 Ind.App. 363, 276 N.E.2d 589, 592. Furthermore, it is inappropriate to require justification of a Board's negative decision by "substantial evidence" since it is clearly the burden of a petitioner for a variance to establish the existence of each of the five statutory prerequisites. Therefore, it is not always necessary

viewing court must find that each of the statutory prerequisites enunciated in IC 18–7–2–71 has been established as a matter of law.[2] *Metropolitan Board of Zoning Appeals of Marion County v. Rumple,* (1973) 261 Ind. 214, 301 N.E.2d 359, 363; *Kunz v. Waterman,* (1972) 258 Ind. 573, 283 N.E.2d 371, 374; *Tell City Board of Zoning Appeals v. Franzman,* (1976) Ind.App., 346 N.E.2d 264, 265. Therefore, the first issue we address is whether the evidence supporting each of the following five statutory grounds is such that no reasonable person could fail to accept the elements as proven:

1.  The grant will not be injurious to the public health, safety, morals, and general welfare of the community.

2.  The use or value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner.

3.  The need for the variance arises from some condition peculiar to the property involved and such condition is not due to the general conditions of the neighborhood.

4.  The strict application of the terms of the ordinance will constitute an unusual and unnecessary hardship if applied to the property for which the variance is sought.

5.  The grant of the variance does not interfere substantially with the metropolitan comprehensive plan adopted pursuant to sections 31 through 37 [18–7–2–31 —18–7–2–37] of this chapter.

IC 18–7–2–71.

■ We are unable to say on the record before us that each of the five determinations required to support the granting of Popcheff's variance has been unequivocally established as a matter of law.[3] Certainly not all five have been so established. We, therefore, reverse the Superior Court's reversal of the Board's denial of Popcheff's Petition for Variance. *See Rumple, supra.*

The Board also contends that the Superior Court erred in finding that Popcheff was denied due process in the Board's hearing on his requested variance. Arguing in support of the Superior Court's reversal, Popcheff characterizes his hearing before the Board as unfair, partial, illegal, arbitrary, and capricious in light of repeated references by remonstrators to a statement allegedly made by Robert Messick, Hearing Examiner of the Metropolitan Development Commission, in a prior rezoning case involving the subject property.[4] This statement was to the effect that if the Board did not "hold the line" and deny requests for variances, the Development Commission could "look at future rezoning petitions in a different perspective." Popcheff argues that these repeated references to Messick's statement denied him a fair and impartial hearing since the Board's decision was tainted by improper considerations and

that remonstrators appear and testify or that other evidence be presented in opposition to a variance. *Standard Life,* 251 N.E.2d at 62.

2.  This is obviously a formidable burden for a petitioner to carry. So long as the controlling legislation continues to require establishment of five very restrictive prerequisites before a Board can grant a variance, courts which review a negative determination by such Board are virtually powerless to overturn such determination. *Standard Life* at 64. This significantly limited scope of review is exemplified by the plethora of appellate decisions which overturn reviewing courts' reversals of Board denials. Indeed, only in the most rare case would a petitioner be able to establish each of the statutory elements *as a matter of law.*

3.  Pursuant to *Marion County Board of Zoning Appeals v. Sheffer and Clark, Inc.,* (1966) 139 Ind.App. 451, 220 N.E.2d 543, 546, we must reverse the Superior Court if one or more of the five statutory grounds has not been established as a matter of law. Suffice it for us to point out that evidence was presented to the Board which supports its finding that Popcheff's property was proposed for residential development by the Comprehensive General Land Use Plan and, therefore, a conflict exists regarding the fifth statutory prerequisite.

4.  Popcheff directs our attention to seven instances in the record where references were made to Messick's alleged statement. Of these references, four were made by remonstrators, two by Popcheff's attorney, and one in a letter from a remonstrating church. We note that the record reveals that the first testimonial reference to the prior rezoning petition before the Development Commission was made by Popcheff's counsel.

pressures regarding the reaction of the Development Commission should Popcheff's requested variance be granted.[5] Popcheff characterizes Messick's statement as a threat that unless the Board exercised its determination in accordance with the Development Commission's wishes and denied Popcheff's Petition for Variance, the Board could expect to be "punished" by an unsympathetic view in future requests for rezoning within the Town of Speedway.

Popcheff cites several cases in support of his position that any decision by the Board which fails to satisfy minimum requirements of due process is illegal and void. Although Popcheff refers us to cases which are easily distinguishable,[6] we agree he was entitled to a full and fair hearing free of improper considerations on his request for variance. *See Marion County Board of Zoning Appeals v. Sheffer & Clark, Inc.,* (1966) 139 Ind.App. 451, 220 N.E.2d 543. We cannot agree, however, that Popcheff has presented us with a record establishing such an unfair hearing beset with improper considerations.

First, we question whether the Board's consideration of the Metropolitan Development Commission's recommendation was, in fact, improper. Pursuant to *Speedway Board of Zoning Appeals of Marion County v. Standard Concrete Materials,* (1971) 150 Ind.App. 363, 276 N.E.2d 589, 592, the Board is expressly authorized to consider such recommendations. *See also Standard Life, supra.* We reaffirm that authorization particularly in light of recent criticisms that Boards lack institutionalized ties to the city or county planning staff. *See Variance Administration in Indiana— Problems and Remedies,* 48 *Ind.L.J.* 240 (1973). Second, we question whether Messick's alleged statement was properly characterized by Popcheff as a threat to the

Board's proper exercise of discretion. We see little distinction between Messick's alleged assertion and legislatively[7] sanctioned instances in which the Executive Director or member of his staff makes strong recommendations to the Board regarding particular variance requests. Admittedly, Messick's recommendation included a warning regarding the Commission's predicted response to changes in uses; nevertheless, Messick, as an individual hearing examiner, could not announce Commission policy nor will we presume highly improper motives on his part. Although the references to Messick's statement were at best ambiguous, Popcheff made no attempt to inquire into or correct the alleged "taint." Furthermore, Popcheff interposed no objection to this testimony nor did he seek a continuance. And finally, we are reluctant to interject the procedural and evidentiary formalities of trial into hearings before Zoning Boards. Citizen remonstrators typically testify in these hearings without the assistance of counsel. For those citizens to lose their case on the basis of chance utterances would be to insert an unnecessary clog in the variance granting system.[8] On the record before us, therefore, we simply cannot agree that Popcheff was denied a full and fair hearing. The Superior Court's reversal of the Board's denial of Popcheff's Petition for Variance is hereby reversed.

MILLER and YOUNG, JJ., concur.

---

5. We note that Popcheff does not present for review any arguments regarding the denial of his right to cross-examine the alleged declarant nor does he argue the Board members should have disqualified themselves for bias.

6. Popcheff presents no authority for the proposition that Boards of Zoning Appeals must afford petitioners procedural due process.

7. *See* IC 18–7–2–72; 18–7–2–73.

8. We note also that the Board members need not have expert training in law and, therefore, they would no doubt encounter difficulty in ruling on evidentiary matters.