**Darrell C. MAXEY and Kenneth Corneil, Jr., Appellants (Plaintiffs Below),**

v.

**BOARD OF ZONING APPEALS, City of Valparaiso, Indiana; George Whitler; Kathryn Karow; J. Serbin; H. Bell; Reid Tempest; Kevin Largura; Linda Bunch and W. Guillaum, Appellees (Defendants Below).**

No. 3–1084A280.

Court of Appeals of Indiana, Third District.

July 24, 1985.

Rehearing Denied Aug. 30, 1985.

Herbert K. Douglas, Douglas, Douglas & Douglas, Valparaiso, for appellants.

Lily M. Schaefer, Valparaiso, for appellee Bd. of Zoning Appeals, City of Valparaiso, Ind.

STATON, Presiding Judge.

Darrell Maxey and Kenneth Corneil purchased a parcel of property which had been used by the Valparaiso Community Schools as a bus maintenance and storage facility. They intended to use the facility in much the same way but as a private, commercial enterprise. Later, when they applied for a "Certificate of Occupancy", their application was denied by the zoning administrator. They appealed this denial to the City of Valparaiso Board of Zoning Appeals. The appeal was denied.

They petitioned the Porter Circuit Court for a writ of certiorari. In response to their petition, the Board of Zoning Appeals filed a motion to dismiss the petition which was granted. The court held:

"1. The Plaintiffs' Petition admits the Plaintiffs' proposed use is contrary to the zoning ordinance, which petition does not support its allegations of illegality.

2. The Plaintiffs' have not complied with the rules of procedure of the Board of Zoning Appeals as indicated in that Ordinance.

3. The Plaintiffs have not exhausted their administrative remedies as required by statute."

Later, a second approach was taken by Maxey and Corneil. They filed a petition for a variance. After a public hearing, the Board of Zoning Appeals denied their petition. From this denial, they filed another petition for writ of certiorari with the Porter Circuit Court. The writ was issued. After a review of the findings of fact filed by the Board of Zoning Appeals, the Circuit Court upheld the denial of the variance. Maxey and Corneil appeal from the denial of the variance and the Circuit Court ruling dismissing their first petition for a writ of certiorari. These issues are presented for our review:

I. Did the trial court err in holding that Maxey and Corneil's first petition failed to support its allegations of illegality of the Board of Zoning Appeals' decision?

II. Did the trial court err in finding that they had not satisfied the requirements of the variance statute?

III. Did the trial court err in finding that the claimed hardship was self-imposed?

IV. Did the trial court err in failing to find an unconstitutional taking of property?

 In reviewing the decision of a Board of Zoning Appeals, this Court and the trial court are bound by the same standard. We presume that the determination of the Board, as an administrative agency with expertise in zoning matters is correct. The Board's decision should not be reversed unless it is arbitrary, capricious or an abuse of discretion. *Porter County Plan Com'n v. Burns Harbor* (1982), Ind. App., 437 N.E.2d 1053, 1055. The petition for writ of certiorari must allege facts showing the decision was illegal and clearly specify the grounds of such illegality. *Suess v. Vogelgesang* (1972), 151 Ind.App. 631, 281 N.E.2d 536, 540, n. 2. Judicial review of the denial of a variance is more limited than when a variance is granted. *Boffo v. Boone Cty. Bd. of Zoning Appeals* (1981), Ind.App., 421 N.E.2d 1119, 1125. The reviewing court must find that each of the statutory prerequisites enunciated in IC 36–7–4–918.4 (Burns Code Ed., 1983)[1] has been established as a matter of law. *Speedway Bd. of Zoning Appeals v. Popcheff* (1979), 179 Ind.App. 399, 385 N.E.2d 1179, 1181. It is the burden of the petitioner for a variance to establish the existence of each of the statutory prerequisites, *Id.* at 1180, n. 1, and "the evidence supporting each prerequisite must be such that no reasonable man could fail to accept that prerequisite as proved." *Boffo, supra* at 1125.

## I.

### Allegations of Illegality

Maxey and Corneil's petition for writ of certiorari alleges that the Board acted illegally because it failed to permit commercial use of the former bus barn property as a continuation of a nonconforming use. However, the petition admits that the bus barn use by the schools was a permitted use. The distinction between a permitted use and a nonconforming use is crucial to the disposition of this issue, since a reading of the ordinance shows that a particular use cannot be both permitted and nonconforming at the same time.

The area where the facility is located is zoned R–1 residential. Single family dwellings surround the facility. Article VIII, Section 8.02 lists the following uses as permitted uses:

"a. Single family detached dwellings.

b. Publicly owned or operated buildings, libraries, parks parkways, and recreational facilities.

c. Churches and other facilities normally incidental thereto, provided that the proposed site for a church is not less than two (2) acres; that there is adequate access to all required off-street parking areas; that there is no parking in the required front yard; and that the church site is adjacent to a major thoroughfare.

d. Public, parochial and private elementary intermediate schools, and/or high schools offering courses in general education, not operated for profit.

e. Colleges, universities and similar type institutions for higher learning, including those land uses which are normally incidental to the operation of such institutions.

f. Nursery schools, day nurseries and child care centers; provided that for each

---

1. (Formerly at IC 18–7–2–71) Variances may not be granted except upon a determination that:

 "(1) the grant will not be injurious to the public health, safety, morals, and general welfare of the community;

 (2) the use or value of the area adjacent to the property included in the variance will not be adversely affected;

(3) the need for the variance arises from some condition peculiar to the property involved and does not exist in similar property in the same zone; and

(4) the strict application of the terms of the zoning ordinance will constitute an unusual and unnecessary hardship as applied to the property for which the variance is sought.

(5) the approval does not interfere substantially with the comprehensive plan."

child so cared for, there is provided and maintained a minimum of one hundred (100) square feet of outdoor play area. Such play space shall have a total minimum area of at least one thousand (1,000) square feet, and shall be screened from any adjoining lot in any residential district in accordance with the requirements of Section 4.28.

g. Private non-commercial recreational areas.

h. Municipal buildings and uses.

i. Home occupation as defined by Article II of the Ordinance.

k. Off-street parking space as required in Article VI.

*l*. Private swimming pools subject to requirements of Section 4.26.

m. Temporary buildings and uses for construction for a period not to exceed one year."

A nonconforming use, on the other hand, is defined in the ordinance as

"[a]ny lawful use of the land or building existing at the date of passage of this Ordinance and located in a district in which it would not be permitted as a new use under the regulations of this Ordinance...."

Maxey and Corneil urge two points in support of their argument. First, the use (originally as a State Highway vehicle maintenance facility before the school district acquired the property) predated the ordinance. Second, vehicle maintenance facilities would not be permitted as new uses under the ordinance; therefore, their proposed use of the property constitutes the continuance of a preexisting nonconforming use. The ordinance does permit continuation of a nonconforming use provided such use is not expanded or extended. City of Valparaiso Zoning Ordinance Article V, Section 5.02.

The Board of Zoning Appeals contends, however, that the schools' use of the property was a permitted use under the provisions of the ordinance because it was a public use. It never was a nonconforming use. Although Maxey and Corneil correctly point out that ownership is not determinative of use,[2] *see Pleasureland Museum, Inc. v. Dailey* (1981), Ind.App., 422 N.E.2d 754, 755, we find an important distinction is evident when the character of the use is examined. Vehicle maintenance garages, per se, are not permitted in the R–1 zoning district, however, because school or public uses are permitted, the bus barn was permitted as an accessory school use.[3] It is the character of the use as school or public which qualifies it as a permitted use in the R–1 zoning district. Educational use of land is by its very nature in furtherance of the public health, welfare and morals. It is to be distinguished from commercial uses of land, and the Valparaiso ordinance clearly makes that distinction in the R–1 classification.

A somewhat analogous situation exists when municipal or governmental uses are exempt from zoning restrictions. Courts in other jurisdictions have held that a township would be exempt under an "essential services" exemption from restrictions on the collection and disposal of refuse but a private operator was not; *Kersheske v. Township of Thomas* (1965), 2 Mich.App. 1, 138 N.W.2d 509; a turnpike authority is exempt from local zoning provisions but not private grantees of excess land previously held by the turnpike authority. *Village on the Hill, Inc. v. Massachusetts Turnpike Authority* (1964), 348 Mass. 107, 202 N.E.2d 602, 611; a private company operating a trucking terminal on land leased from the State is subject to local zoning ordinances or regulations even though the State as a governmental user would not be. *Youngstown Cartage Co. v.*

2. Article V, Section 5.10 of the ordinance provides:
"There may be a change in tenancy, ownership, or management of an existing nonconforming use, provided all regulations applicable to nonconforming uses are observed."

3. It is generally recognized that permitted uses include accessory uses customarily incident to the permitted use. 101A CJS Zoning & Land Planning § 148, p. 464.

*North Point Peninsula, Etc.* (1975), 24 Md.App. 624, 332 A.2d 718. In each case above the distinction focused upon the governmental or public nature of the exempt use as compared to the private or commercial nature of the non-exempt use.

■ The character of the use changes when it ceases to be governmental and becomes commercial. It becomes a use which would not be permitted as a new use within the district. Thus we have no difficulty in holding that the plaintiffs' proposed use of the property, although similar to the schools' use when broadly characterized as a vehicle maintenance garage, is neither a permitted use under the ordinance nor a continuation of a nonconforming use. The schools' use was permitted; therefore, the use was never nonconforming.

The decision of the Board which denied Maxey and Corneil's petition to operate the facility as a continuation of a nonconforming use was not illegal, and the trial court properly dismissed the petition for writ of certiorari for failing, as a matter of law, to support its allegations of illegality.[4]

II.

Variance Requirements

■ The Board of Zoning Appeals found that Maxey and Corneil had failed to establish the five statutory prerequisites (cited at n. 1) necessary for the grant of a variance. The trial court held that there was evidence to support the Board's finding. Stated another way, the trial court found that Maxey and Corneil had failed to meet their burden of establishing the existence of each prerequisite such that no reasonable person could fail to accept them as proved. *Metropolitan Board of Zoning Appeals v. Standard Life Ins. Co.* (1969), 145 Ind.App. 363, 251 N.E.2d 60. The prerequisites are very restrictive, and it is extremely difficult for a petitioner to estab-

lish all five as a matter of law. *See Speedway Bd. of Zoning Appeals v. Popcheff, supra,* 385 N.E.2d at 1181, n. 2. Moreover, since the burden is on the petitioner, review of the Board's denial is not tested by the "substantial evidence" standard. *Speedway Board of Zoning Appeals v. Standard Concrete Materials* (1971), 150 Ind. App. 363, 276 N.E.2d 589, 591. It is not always necessary that remonstrators appear and testify or that other evidence be presented in opposition to a variance. *Id.* at 592.

■ The Board found that prerequisites one (1) and two (2) had not been met because the use of hazardous materials and procedures and excessive noise in close proximity to a residential neighborhood would be injurious to public health and safety, and the general welfare of the community. The scope of activities and hours of operation far exceeded the schools' use of the property. These aspects of the proposed use would have a substantial negative effect on the future use and present value of adjacent properties.

Maxey and Corneil proposed to repair motor vehicles including automobiles, semitractors, recreational vehicles and motorcycles as well as small engines such as lawnmowers, snowmobiles and snowplows. The hours of operation would be from 6:00 a.m. to 6:00 p.m. Monday through Friday and from 6:00 a.m. to 4:00 p.m. on Saturday. A neighbor's log of activities, introduced at the hearing, showed vehicles coming and going and other activities occurring at the property during hours other than those stated on the petition. The evidence also included a police report of a complaint of excessive noise on the premises, which the investigating officer reported to be preparation of cars for a demolition derby. Other than the statements of Maxey and Corneil's attorney to the contrary, they presented no evidence that the proposed operation would not be injurious to the

4. The other grounds for dismissal of this first petition were evidently based upon the fact that the petition alleged that the Board should have granted a variance. However, Maxey and Cor-

neil had not actually requested or followed the procedures for requesting a variance in their first appeal to the Board.

public or have an adverse effect on the use or value of adjoining property.

■ Maxey and Corneil presented evidence that the property was narrow and quite deep, containing several garage-type buildings and a parking area. An expert appraiser testified on their behalf and submitted a report concluding that it would not be profitable to develop the property for either single family or multi-family residential. The Board found that there was insufficient evidence that Maxey and Corneil had explored and exhausted other alternative uses of the property. In other words, the Board was not persuaded that the need for the variance arose from some condition peculiar to the property.

■ The same evidence is applicable to the determination by the Board that strict application of the ordinance would not constitute an unusual and unnecessary hardship to the property because it could be developed for some other use more acceptable to the Comprehensive Plan. We emphasize that the burden is on the party seeking the variance to show that the property cannot yield a reasonable return if used only for a purpose allowed in that zone, that the plight of the owner is due to unique circumstances not common to the neighborhood in general, and that the proposed use will not alter the essential character of the locality. *Nelson v. Board of Zoning Appeals of Indianapolis* (1959), Ind.App., 158 N.E.2d 167, 174 (*reversed on other grounds* 240 Ind. 212, 162 N.E.2d 449). The Board was not persuaded that no reasonable use could be made of the land, and we are convinced that its distinction between public use and commercial use clearly indicates that the proposed use would alter the essential character of the locality.

Finally the Board found that approval of the variance would interfere substantially with the Comprehensive Plan since one of its major goals is to eliminate non-conforming uses and to preserve residential neighborhoods.

■ Since a petitioner for a variance must establish the existence of *all* of the prerequisites, the failure of proof on any one will be sufficient to defeat his request. *See Metropolitan Development Com'n of Marion Cty. v. Camplin* (1972), 153 Ind. App. 622, 288 N.E.2d 569, 572. None of the prerequisites has been unequivocally established as a matter of law.

### III.

### Hardship Self-Imposed

Because we agree that Maxey and Corneil failed to establish the elements required for a finding of hardship, it is unnecessary to discuss their contention that the Board improperly decided that any hardship they may have suffered was self-imposed.

### IV.

### Unconstitutional Taking

■ For the denial of a variance to be an unconstitutional taking, the trial court must find that the ordinance as applied would preclude the use of the property for any purpose to which it is reasonably adapted and that the variance will not adversely affect the essential character of the locality. *Metropolitan Board of Zoning Appeals v. Gateway Corp.* (1971), 256 Ind. 326, 268 N.E.2d 736, 742. The trial court must view the record of the administrative proceeding in the light most favorable to the decision and the evidence will not be reweighed. *Boffo v. Boone Cty. Bd. of Zoning Appeals, supra* at 1125.

■ With regard to the first factor, the Board did not accept the appraiser's report as conclusive because they were not satisfied that other alternative uses had been examined. The appraiser's report was confined to an examination of the economic feasibility of developing the land for single or multi-family housing; the report concluded that such uses, while physically possible on the site, would not be profitable. Maxey and Corneil did not carry their burden of showing a preclusion of any reasonable use.

The Board did find that the proposed use would have an adverse effect on the area. We must agree with the Board that the distinction between the public, bus-barn use and the commercial enterprise operated by Maxey and Corneil is critical. In a residential neighborhood the comings and goings of the public, seeking vehicle and engine repairs year 'round at a commercial establishment differs significantly from the maintenance and operation of school buses by regular employees during part of the year. The zoning ordinances recognize and support this distinction by limiting commercial and industrial uses to generally non-residential areas. We agree that the change from the public-purpose use used by the schools to the less limited commercial use by Maxey and Corneil would adversely affect the essential character of the residential neighborhood. Thus the denial of the variance does not rise to the level required for an unconstitutional taking of property.

The judgment is affirmed.

GARRARD and HOFFMAN, JJ., concur.