The TOWN OF BEVERLY SHORES, Indiana; Carol Ruzic, John F. Keys, Robert J. Love, Karlis Zarins, Ellen L. Firme in their capacity as members of the Town Council of the Town of Beverly Shores, Indiana; The Board of Zoning Appeals of the Town of Beverly Shores, Indiana; Robert W. Beglin, Jeffery B. Katz, John R. Daraska, John Vaznelis, and Paul E. Kline, in their capacity as members of the Board of Zoning Appeals of the Town of Beverly Shores, Indiana; and Leon W. Marek, in his capacity as the Building Commissioner of the Town of Beverly Shores, Indiana, Appellant (Respondents Below),

v.

George C. BAGNALL and Ann H. Bagnall, Appellees (Petitioners Below).

No. 64A03–9010–CV–455.

Court of Appeals of Indiana, Third District.

May 16, 1991.

Rehearing Denied July 16, 1991.

Terry K. Hiestand, Chesterton, for appellant.

Barbara A. Young, Katharine E. Gerken, Todd A. Leeth, Valparaiso, for appellees.

STATON, Judge.

The Town of Beverly Shores and the Beverly Shores Board of Zoning Appeals appeal the judgment of the trial court reversing the Board's denial of a zoning variance to George and Ann Bagnall. The Town presents for our review the sole issue of whether the decision of the trial court was contrary to law.

We remand to the Board of Zoning Appeals.

On February 26, 1968, the Bagnalls purchased Lot 7 on Lake Front Drive in the Town of Beverly Shores, Indiana. The lot was 50 feet wide and approximately 275 feet deep. It contained approximately 13,750 square feet.

A 1982 amendment to the zoning ordinance for the Town of Beverly Shores provided that a single-family dwelling may be constructed only upon a lot having a minimum of 15,000 square feet. An additional requirement mandated lot width of 100 feet.[1]

In November 1987, the Bagnalls applied for a building permit to construct a single-family dwelling on Lot 7. The application

---

1. A 1969 amendment was declared unconstitutional in *Town of Beverly Shores Plan Comm'n* *v. Enright* (1984), Ind., 463 N.E.2d 246.

was denied by the Building Commissioner of Beverly Shores[2] and the Bagnalls subsequently filed an application for hearing before the Board of Zoning Appeals ("BZA").

On April 21, 1988, the BZA considered the Bagnalls' application, but requested that the Bagnalls provide further information. On November 28, 1989, a public hearing was held, at which some Beverly Shores residents expressed their opposition to the Bagnalls' application. A final hearing was held on January 10, 1990, during which a motion to deny the Bagnalls' request was approved.

The BZA issued written findings as follows:

"1. That the DEVELOPMENT STANDARD VARIANCES requested would be injurious to public health, safety, morals, and general welfare because the size and width of the Petitioners' lot are substantially below the minimum sizes determined necessary to protect the public health, safety, morals and general welfare which standards are set forth in Sections 640.2, 640.3, 640.7, and Section 431 of the Beverly Shores Zoning Ordinance Number 84–29 as amended, hereinafter referred to as the "Ordinance." Of particular concern to the Board is the inevitable damage to the existing topography that would result from the development of the narrow lot and the conflicts with adjacent well and septic uses which would arise in attempting to develop the lot in conformity with the requirements of the Ordinance.

2. That the DEVELOPMENT STANDARD VARIANCES requested would cause substantial adverse affect on the neighboring property BECAUSE any structure on a substandard lot would be contrary to the stated purposes of the Beverly Shores Zoning Ordinance as set forth in Section 110 of said Ordinance and including, but not limited to:

Section 110.1 'To promote the public health, safety, comfort, morals, and general welfare of the Town of Beverly Shores in light of the Town's reliance on private wells and septic systems and the lack of a tax base for a public water and sewer system in the foreseeable future.'

Section 110.2 'To conserve the values of property throughout the Town of Beverly Shores and to protect the character and stability of residential areas.'

Section 110.4 'To provide adequate light, air, privacy and convenience of access to property and safety from flood, fire and other dangers.'

Section 110.6 'To regulate and restrict the location and use of buildings, structures and land to residences, businesses and other uses, and to restrict the intensity of such uses.'

3. That the DEVELOPMENT STANDARD VARIANCES requested would not by the strict application of the terms of the zoning ordinance result in an unnecessary hardship in the use of the property BECAUSE Petitioners' lot is not dissimilar from any number of other similarly situated parcels which cannot be built upon because they do not conform to the Zoning Ordinance whose owners have joined with the owners of similarly situated adjoining parcels to make a conforming building site. Petitioners are not precluded from other lawful uses of their property. Even though the property does not meet the current standards for development as a single family residence and therefore does not have the value that the Petitioners would desire for that purpose, said property nevertheless is not without value."

Record, pp. 19–20.

On February 8, 1990, the Bagnalls initiated an action in the Porter Superior Court.

**2.** The Building Commissioner cited three provisions of the zoning ordinance with which the Bagnalls' proposal failed to comply. Lot 7, having approximately 13,750 square feet, does not meet the minimum square footage requirement in section 431. Lot 7, 50 feet wide, does not meet the minimum 100–foot width requirement in section 640.2. The Bagnalls' proposal included 8 foot side yard provisions, while section 640.7 requires minimum side yards of 15 feet.

Judgment was entered by the trial court on June 20, 1990. Pursuant to Indiana Rules of Procedure, Trial Rule 52(A)(2), the trial court issued special findings of fact and conclusions of law as follows:

"1. Plaintiffs purchased the lot in question in February of 1968. At the time of purchase, the lot was a valid permissible building lot within the Town of Beverly Shores, Indiana.

2. Plaintiffs' intention in purchasing the lot was for the construction of a single family residence.

3. The affected lot is on Lake Front Drive in the Town of Beverly Shores, Indiana, which drive runs essentially in a northeast-southwest direction fronting on Lake Michigan.

4. A single family residence exists on Lot 6, adjacent to Lot 7. Lot 8, also adjacent to Lot 7, is vacant but owned by the individual who owns Lot 9. Plaintiffs have attempted to purchase Lot 8 but have been unable to do so. A single family residence is likewise constructed upon Lot 9.

5. In 1982 The Town of Beverly Shores promulgated a zoning ordinance requiring a minimum lot width of 100 feet and a minimum lot area of 15,000 square feet for future construction of homes on Lake Front Drive. The Plaintiffs' lot is 50 feet in width and contains approximately 13,750 square feet.

6. In November of 1987 Plaintiffs applied to the Building Commissioner of the Town of Beverly Shores for a residential construction permit. Said permit was denied. An appeal was thereafter filed with the Board of Zoning Appeals for The Town of Beverly Shores requesting a variance from the building standards aforementioned.

7. Petitioners have applied to and received a permit from the Porter County Board of Health for construction of water and septic system[s] on the affected lot.

8. Ultimately, on January 10, 1990, the Board of Zoning Appeals voted three to one to deny Plaintiffs' request for a variance. Thereafter, this litigation ensued.

9. The standard by which the Board of Zoning Appeals of the Town of Beverly Shores shall be governed is contained in Sec. 542 of the Zoning Ordinance providing, in part, that a variance may be approved only upon a determination that: 1) the approval will not be injurious to the public health, safety, morals and general welfare of the community, 2) the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner, 3) the strict application of the terms of the zoning ordinance will result in practical difficulties in the use of the property.

It is necessary, therefore, to examine each sub-section of the Zoning Ordinance, Sec. 542 and the findings as adopted by the Board of Zoning Appeals:

1) 'The approval will not be injurious to the public health, safety, morals, and general welfare of the community.' The Board of Zoning Appeals finds that the approval of the Plaintiffs' variance would be injurious to the public health, safety, morals and general welfare of the community while not assigning any specific findings thereto. The Board says that it is concerned regarding the 'inevitable damage to the existing topography that would result from the development of the narrow lot and the conflicts with adjacent well and septic uses ...' This finding is insufficient to show that the approval would be injurious to the public health, safety, morals and general welfare of the community. In fact, the Plaintiffs have obtained approval from the Porter County Board of Health for well and septic permits on the very lot in question. The 'finding' to the 'inevitable damage to the existing topography' is a vague finding. Obvious[sic] the Plaintiffs in building upon their lot would have to rearrange and alter the topography. This may well involve 'inevitable damage,' but it cannot be said that this would be injurious in any way

to the public health, safety, morals and general welfare of the community.

2) 'The use and value of the adjacent area to the property included in the variance will not be affected in a substantially adverse manner.' The Board of Zoning Appeals finds regarding this standard that the approval of Plaintiffs' request 'would cause substantial adverse effect on the neighboring property.' Their reason in finding for this is 'because any structure on a substandard lot would be contrary to the purposes of the Beverly Shores Zoning Ordinance, etc.' This is not a proper finding as to *why* the use and value of the adjacent area would be affected in a substantially adverse manner. In fact, as aforesaid, all along Lake Front Drive are single family residences. Some of these residences, in fact, are built on 50 foot wide lots. Further, with the very high value of property in and on Lake Front Drive, it can hardly be said the Plaintiffs' purposed[sic] construction of a single family residence on his[sic] lot would in any way substantially adversely affect the adjacent property. There simply is no evidence in the record to support the Board of Zoning Appeals finding in this regard.

3) 'The strict application of the terms of the Zoning Ordinance will result in practical difficulties in the use of the property.' In its findings, the BZA concluded that the strict application would not result in practical difficulties in the use of the property because 'petitioners' lot is not dissimilar from 'any number of other similarly situated parcels which cannot be built upon because they do not conform with the zoning ordinance ...' Further, the BZA concludes that the petitioners 'are not precluded from other lawful uses of their property' and that 'said property nevertheless is not without value.' Such findings by the Board of Zoning Appeals border upon being ludicrous. The Plaintiffs own Lot 7. This lot is zoned residential. The lot may be used for no other purpose in the Town of Beverly Shores. The Plaintiffs have an extreme hardship due to the current terms of the Zoning Ordinance. They can use their property for nothing other than a single family residence. They have no other 'lawful use' of their property other than to be able to build a single family residence thereon. Other than some nebulous value of a very expensive picnic ground, Plaintiffs' property has no value.

Accordingly, the Court finds that the Findings adopted by the Board of Zoning Appeals in denying the Petitioners/Plaintiffs' Application for a Variance are wholly inadequate and not supported by the evidence.

10. The Board of Zoning Appeals, at least in their argument to the Court, rely heavily upon the provisions of Section 110 et seq. of the Zoning Ordinance. That section of the Zoning Ordinance is entitled 'Purpose' and refers to (Sec. 110.2) 'to conserve the values of property throughout the Town of Beverly Shores and to preserve the character, ambience and stability of residential areas and to ensure that landscape continues to be generally dominant over the improvements.' Further, Sec. 110.3 provides for the encouragement in conservation of natural contours, vegetation, wildlife, as well as all the scenic qualities of the areas of the Town of Beverly Shores. The purposes of such zoning ordinances certainly do not lend themselves to any quarrel or disagreement by this Court. However, to have the Board of Zoning Appeals conclude that 'the Plaintiffs' admitted plan to sacrifice the dune existing on their property for the purpose of 'improving' their property, is clearly contrary to both the spirit and the letter of the current ordinance.'

11. This Court finds that the preceding [sic] finding by this Court is the true issue between these parties:—Namely, the provisions of the Zoning Ordinance concerning the Town's emphasis on environmental and ecological concerns,

primarily, with the preservation of the natural beauty in dune areas within the Town of Beverly Shores. However, there is a conflict between those generalizations as stated in the aforementioned section and the specifics provided for in Sec. 542 in the granting or denial of a variance and the development standards applying to property with the Town.

12. The Town of Beverly Shores Board of Zoning Appeals has resolved the aforementioned conflict in factor[sic] of the general purpose of the zoning Ordinance as opposed to the specific standards provided in Sec. 542 and against the petitioner. Such a determination is contrary to law.

## CONCLUSIONS OF LAW

1. This Court concludes based upon the foregoing findings that the Board of Zoning Appeals' denial of the Plaintiffs' variance was improper and illegal due to the lack of proper evidence presented to allow a reasonable determination that the factors under Sec. 542 of the Zoning Ordinance was[sic] not met.

2. The Board of Zoning Appeals' denial of the Plaintiffs' variance was illegal due to the failure of the Board of Zoning Appeals to issue its written findings pursuant to law and the reasons for such findings.

3. The Board of Zoning Appeals' denial of the Plaintiffs' variance constitutes an improper and unconstitutional taking of the Plaintiffs' property for the apparent benefit of the Town of Beverly Shores without compensating the Plaintiffs for the reasonable value of such taking. The Plaintiffs' contentions that the Board of Zoning Appeals' denial of the Plaintiffs' variance was illegal due to an alleged violation of the open door law is[sic] without merit.

4. A review of the record and evidence submitted to the Court by way of brief and argument fails to convince this Court that the Plaintiffs' claim of the

Defendants' bad faith would justify this Court awarding Plaintiffs their costs and attorney's fees in this action.

Record, pp. 127–131.

The trial court entered an order directing the BZA to grant the Bagnalls' application for a variance. The BZA contends that the trial court's judgment is contrary to law in that it is based on erroneous findings of fact. The BZA insists that the trial court impermissibly considered a "self-serving" affidavit executed by Mr. Bagnall and placed a burden upon the BZA to rebut such evidence. The BZA also contends that the trial court failed to order the appropriate remedy in the instant case, i.e., remand to the BZA.

■ On appeal, we afford the special findings by the trial court a two-tier standard of review. First, we must determine if the evidence supports the findings; next, we must determine if the findings support the judgment. If the findings support the judgment and are not clearly erroneous, the judgment will be affirmed. Where the trial court reviewed the decision of a Board of Zoning Appeals, we necessarily also review the Board's findings of fact. *Porter County Bd. of Zon. App. v. Bolde* (1988), Ind.App., 530 N.E.2d 1212, 1215.

■ The trial court and this court are bound by the same standard when reviewing a decision of a Board of Zoning Appeals:

"We presume that the determination of the Board, as an administrative agency with expertise in zoning matters is correct. The Board's decision should not be reversed unless it is arbitrary, capricious or an abuse of discretion. *Porter County Plan Com'n v. Burns Harbor* (1982), Ind.App., 437 N.E.2d 1053, 1055. The petition for writ of certiorari must allege facts showing the decision was illegal and clearly specify the grounds of such illegality. *Suess v. Vogelgesang* (1972), 151 Ind.App. 631, 281 N.E.2d 536, 540, n. 2. Judicial review of the denial of a variance is more limited than when a variance is granted. *Boffo v. Boone Cty.*

*Bd. of Zoning Appeals* (1981), Ind.App., 421 N.E.2d 1119, 1125."

*Maxey v. Board of Zoning Appeals* (1985), Ind.App., 480 N.E.2d 589, 592, *reh. denied, trans. denied.*

■ The BZA is correct in its assertions that a request for a variance is not an adversarial proceeding and that no duty is imposed upon a zoning board to present evidence contradicting that presented by a petitioner. However, a duty is imposed upon a zoning board to reach a decision supported by the evidence before it. In granting or denying a variance, a zoning board has a duty to make special findings of fact. If these findings are not supported by evidence, the board will be said to have abused its discretion. *Boffo, supra* at 1125–26.

The trial court reviewed the testimony and exhibits presented to the BZA and concluded that the findings of the BZA were not supported by the evidence. The trial court further concluded that the denial of a variance to the Bagnalls constituted an unconstitutional taking of property.

■ Not every zoning burden placed upon private property constitutes a taking; rather, a taking will be found only where all reasonable uses of the property are prevented. A distinction is to be drawn between the situation where a parcel is not zoned for its best and most profitable use and that where a zoning restriction results in a deprivation of one's property rights. *Young v. City of Franklin* (1986), Ind., 494 N.E.2d 316, 317–18 *reh. denied.* For the denial of a variance to be an unconstitutional taking, the ordinance as enforced must preclude the use of the property for any purpose to which it is reasonably adapted. *Maxey, supra* at 595.

Uncontroverted evidence showed that the Bagnalls' property is located in an area exclusively zoned as a residential area. However, the property is unsuitable for residential construction under a zoning or-

dinance enacted after the Bagnalls' acquisition of their property.

■ The BZA's conclusion that the Bagnalls failed to establish that they would suffer an undue hardship in the use of their property is contrary to the evidence before it.[3] The BZA was not required to *produce* evidence concerning potential uses of the property. However, they were required to make findings consistent with the evidence before them. The BZA arbitrarily concluded that the Bagnalls' property has value other than as a residential site. The sole "evidence" as to other potential uses of the property consisted of an observation made in jest by counsel that the neighbors to Lot 7 enjoy an adjacent scenic park.

■ We have reviewed the evidence in support of the trial court's findings of fact, which evidence was previously submitted to the BZA. The findings of the trial court have evidentiary support in the record. These findings support the judgment and are not clearly erroneous. Therefore, we affirm the judgment of the trial court. *See Porter v. Bolde, supra.*

■ Although the trial court correctly concluded that denial of a variance to the Bagnalls constituted a taking of their property, we agree with the BZA that the appropriate remedy was to remand the case to the BZA. A trial court may compel agency action wrongly withheld, including the issuance of an order to grant a variance. *Mishler v. County of Elkhart* (1989), Ind., 544 N.E.2d 149, 152–53. However, where a trial court has found that an action by a zoning board constituted an unconstitutional taking of property, the appropriate remedy is to remand for a decision by the board as to whether they will compensate the property owner for the taking or grant the petitioner's requested relief. *Id.* at 153.

---

3. The BZA applied a standard of "unnecessary hardship" rather than the standard of "practical difficulties" set forth in IC 36–7–4–918.5 and Section 542 of Beverly Shores Ordinance 208 establishing zoning and subdivision regulations.

We note that reversal by a trial court of a zoning board's decision is appropriate where the board committed an error of law. *Boffo, supra* at 1125.

We remand this case to the Beverly Shores Board of Zoning Appeals.

CHEZEM, J., concurs.

HOFFMAN, J., dissents and files separate opinion.

HOFFMAN, Presiding Judge, dissenting.

I respectfully dissent. As the majority notes, to establish that an unconstitutional taking occurred, petitioners had to show that the zoning ordinance prevented the use of the property for any reasonable purpose. *Maxey v. Board of Zoning Appeals* (1985), Ind.App., 480 N.E.2d 589, 595. However, petitioners also had to show that the variance would not adversely affect the essential character of the locality. *Id.* Petitioners' plan to develop the property involved the leveling of a dune, the standard practice of property owners in the past. The BZA denied the variance because it found that, *inter alia*, petitioners' plan would result in "inevitable damage to the existing topography" and was contrary to the stated purposes of the ordinance.[1] Neither this Court nor the trial court may reverse the decision of a zoning board unless it is arbitrary, capricious or an abuse of discretion. *Id.*

The town of Beverly Shores is part of the Indiana Dunes National Lakeshore, a national park extending along the shoreline of southern Lake Michigan. Authorization of the park in the 1960's culminated a 50-year fight to save the dunes from the encroachment of industrialization. The area is a highly unique and richly diverse ecosystem which prompted the poet Carl Sandburg to write, "The dunes are to the Midwest what the Grand Canyon is to Arizona and the Yosemite is to California. They constitute a signature of time and eternity."

Clearly, the trial court substituted its discretion for that of the BZA when it decided preservation of such a distinctive natural landscape was not a legitimate concern. Petitioners failed to show that the variance would not adversely affect the essential character of the locality; therefore, the BZA's denial of the variance was not an unconstitutional taking. I would reverse the judgment of the trial court and affirm the decision of the BZA.

---

1. Three of the fifteen purposes of the Beverly Shores zoning ordinance are as follows:

   "To promote the public health, safety, comfort, morals, and general welfare of the Town of Beverly Shores in light of the Town's reliance on private wells and septic systems and the lack of a tax base for a public water and sewer system in the foreseeable future.

   To conserve the values of property throughout the Town of Beverly Shores and to preserve the character, ambience, and stability of residential areas and to insure that landscape continues to be generally dominate [sic] over the improvements.

   To encourage the conservation of natural contours, vegetation, wild life and all the scenic qualities of the area of the sand dunes and all associated and related geographical elements which are so unique and valuable to the balance of nature. The special value of Beverly Shores is that it is one of the few towns which contains beautiful and unique ecological specimens."

   Sections 110.1–110.3