The TOWN OF BEVERLY SHORES, Indiana; Carol Ruzic, John F. Keys, Robert J. Love, Karlis Zarins, and Ellen L. Firme, as members of the Town Council of the Town of Beverly Shores; the Board of Zoning Appeals of the Town of Beverly Shores, Indiana; Robert W. Berglin, Jeffery B. Katz, John R. Daraska, John Vaznellis, and Paul E. Kline, as members of the Board of Zoning Appeals of the Town of Beverly Shores, and Leon W. Marek, as the Building Commissioner of the Town of Beverly Shores, Appellants (Respondents Below),

v.

George C. BAGNALL and Ann H. Bagnall, Appellees (Petitioners Below).

No. 64S03–9204–CV–322.

Supreme Court of Indiana.

April 29, 1992.

Terry K. Hiestand, Chesterton, for appellants.

Barbara A. Young, Katharine E. Gerken, Hoeppner, Wagner & Evans, Valparaiso, for appellees.

SHEPARD, Chief Justice.

A town's board of zoning appeals denied a requested variance which would have permitted construction of a residence on the Indiana dunes. The trial court held that this denial was an unconstitutional taking. We hold that the denial was proper on grounds related to saving the dunes, and reverse.

### I. Case History

Since 1968, George and Ann Bagnall have owned a vacant lot across the road from Lake Michigan in the Town of Beverly Shores. They desire to build a house on the land, but the lot does not conform to zoning requirements the town adopted in 1982. It is too narrow and too small.[1] In

---

1. The Bagnalls' lot is 50 feet wide and 275 feet deep. It contains about 13,750 square feet. The 1982 amendment to the zoning ordinance for the Town of Beverly Shores provided that a single-family dwelling may be constructed only upon a lot having a minimum of 15,000 square feet and a width of at least 100 feet.

addition, the Bagnalls' design runs contrary to a local ordinance enacted to preserve the unique sand dunes which grace Indiana's portion of the lakeshore.[2]

After being denied a building permit, the Bagnalls sought a zoning variance from the Beverly Shores Board of Zoning Appeals (BZA). The board denied the permit. The Bagnalls petitioned for review in the Porter Superior Court pursuant to Ind. Code § 36–7–4–1003 (West 1983). They prevailed; the trial court ordered the BZA to grant the Bagnalls' application for a variance. The town appealed the trial court's ruling pursuant to Ind.Code § 36–7–4–1011 (West 1983). A divided Court of Appeals affirmed the trial court's determination that denial of the variance constituted a taking of property, but remanded the case to the BZA for a decision as to whether the town would compensate the Bagnalls for the taking or grant the requested variance. *Town of Beverly Shores v. Bagnall* (1991), Ind.App., 570 N.E.2d 1363.

The town seeks transfer. Because we conclude the BZA's denial of the requested variance was lawful, we grant transfer, vacate the decision of the Court of Appeals, and reverse the judgment of the trial court.

## II. Standard of Review

■ When an aggrieved party seeks relief in a trial court from an adverse administrative determination and attacks the evidentiary support of the board's findings, he bears the burden of demonstrating that the board's conclusions are "clearly erroneous." *See Stewart v. Fort Wayne Community Schools* (1990), Ind., 564 N.E.2d 274. The "substantial evidence" test discussed in *Stewart* was first set out by this Court in the related cases of *Stiver v. State ex rel. Kent* (1936), 211 Ind. 370, 1 N.E.2d 592, and *Stiver v. State ex rel. Kent* (1936), 211 Ind. 380, 1 N.E.2d 1006. In the second

*Stiver* opinion, we summarized the standard as follows: "If the procedural requirements are followed, including the assignment of a legal cause ... and if there is substantial evidence presented which tends to support the legal cause, and if the hearing is, in fact, fair, the proceeding is lawful." 1 N.E.2d at 1007. We recently reaffirmed this standard of review in *City of Indianapolis v. Hargis* (1992), Ind., 588 N.E.2d 496, stating that a "reviewing court may vacate a board's decision only if the evidence, when viewed as a whole, demonstrates that the conclusions reached by the board are clearly erroneous." *Id.* at 498.

■ Such a standard naturally requires great deference toward the administrative board by the reviewing court when the petition challenges findings of fact or the application of the facts to the law. On the other hand, if the allegation is that the board committed an error of law, no such deference is afforded and reversal by the trial court is appropriate if error of law is demonstrated. *See Boffo v. Boone Cty. Bd. of Zoning Appeals* (1981), Ind.App., 421 N.E.2d 1119, 1125–26. Absent such illegality, the trial court may not substitute its judgment for that of the board. *Id.*

■ From this general standard of review, we have derived more particular rules applicable to cases involving zoning variances. In order to set aside the determination of a board which has denied a zoning variance, the reviewing court must find that each of the statutory prerequisites for variance has been established as a matter of law. *Metropolitan Board of Zoning Appeals v. Standard Life Insurance Co.* (1969), 145 Ind.App. 363, 251 N.E.2d 60, *trans. denied* (1970). "In other words, the evidence *supporting* each prerequisite must be such that no reasonable man could fail to accept that prerequisite as proved." *Id.* at 61.

---

2. As Presiding Judge Hoffman wrote in his dissent from the Court of Appeals decision in this case: "The town of Beverly Shores is part of the Indiana Dunes National Lakeshore, a national park extending along the shoreline of southern Lake Michigan. Authorization of the park in the 1960's culminated a 50–year fight to save the dunes from the encroachment of industrialization. The area is a highly unique and richly diverse ecosystem which prompted the poet Carl Sandburg to write, 'The dunes are to the Midwest what the Grand Canyon is to Arizona and the Yosemite is to California. They constitute a signature of time and eternity.'" *Town of Beverly Shores v. Bagnall* (1991), Ind.App., 570 N.E.2d 1363, 1370 (Hoffman, P.J., dissenting).

On appeal, the losing party in the trial court likewise bears the burden of persuading the appellate court that the trial court's determination was erroneous. The town must persuade us that the board's determination was supported by substantial evidence and thus not clearly erroneous. *See Hargis*, 588 N.E.2d 496; *Porter Co. Bd. of Zoning App. v. Bolde* (1988), Ind.App., 530 N.E.2d 1212, 1215. The Bagnalls sought variances from three requirements in the local ordinance: minimum lot size, minimum width of lot, and minimum set-back. The board declined to grant the variances, providing three reasons: first, that granting the variances would be injurious to public health, safety, morals, and general welfare due to the inevitable damage to the existing topography; second, that these variances would cause substantial adverse effects on neighboring property; and third, that strict application of the standards would not constitute a hardship.[3] If the board's decision is correct on any of these grounds, its decision should be sustained.

### III. Protection of Dune Topography

When determining whether to grant an application for a building permit, the Building Committee of Beverly Shores is directed by Section 810 of the town's zoning ordinance to consider the effect on dune topography. Section 810 embodies a policy requiring builders to minimize the effects of building on dunes.[4] Concern for the dunes is also reflected in Section 110 of the ordinance, which lists among its purposes "the conservation of natural contours, vegetation, wild life and all the scenic qualities of the area of the sand dunes and all associated and related geographical elements which are so unique and valuable to the balance of nature." Record at 185.

We have affirmed the constitutionality of such requirements for mitigation. *DNR v. Indiana Coal Council, Inc.* (1989), Ind., 542 N.E.2d 1000.

The dune on the Bagnalls' property is eighteen feet high. The building plans submitted to the board called for excavating an estimated 1,100 cubic yards, essentially obliterating the dune. The BZA cited the Bagnalls' failure to comply with the ordinance relative to the dunes in denying the variance. In written findings accompanying its decision, the BZA noted that the variance requested:

> would be injurious to public health, safety, morals, and general welfare because the size and width of the Petitioners' lot are substantially below the minimum sizes determined necessary to protect the public health, safety, morals and general

---

3. Indiana has long recognized economic hardship as a basis for relief from building and zoning ordinances. *See, e.g., City of East Chicago v. Sinclair Refining Co.* (1952), 232 Ind. 295, 111 N.E.2d 459. *See also* Note, *Zoning Variances,* 74 Harv.L.Rev. 1396, 1401 (1961).

4. *Section 810, "Dune Topography,"* reads as follows:

The Building Committee in determining approval of a building permit application for construction on dune topography shall consider the Sections 810.1–810.10 of this Article VIII, in addition to the other provisions of this Ordinance.

Section 810.1: Planning and design to fit the topography, soils, geology, hydrology and other conditions existing on the proposed site.

Section 810.2: Orientation of the planning and design to the site so that grading and other site preparation is kept to an absolute minimum.

Section 810.3: The shape of essential grading to complement the natural land forms and prohibition of all successive padding and/or terracing of the building site.

Section 810.4: Development of the site so that construction can be completed within one construction season in order that areas are not left bare and exposed during the winter-spring period.

Section 810.5: Accomplishment of all paving as rapidly as possible after grading.

Section 810.6: Landscaping of areas around the proposed structure in a manner which blends into the natural topography.

Section 810.7: Demonstration of a concern for the view of the dune as well as the view from the dune.

Section 810.8: Special consideration in the design of such visual elements as sidewalks and pathways to enable the maximum identity and uniqueness of character to be built into each site.

Section 810.9: Minimum disruption of existing plants or ground cover.

Section 810.10: Minimum impact on the street right-of-way.

welfare which standards are set forth in ... the 'Ordinance.' Of particular concern to the Board is the *inevitable damage to the existing topography* that would result from the development.... Record at 16 (emphasis added).

On review, the trial court concluded that the BZA's finding regarding inevitable damage to the existing topography was "a vague finding." The court also said, "Obvious [sic] the Plaintiffs in building upon their lot would have to rearrange and alter the topography. This may well involve 'inevitable damage,' but it cannot be said that this would be injurious in any way to the public health, safety, morals and general welfare of the community." Record at 129.

■ We agree with the trial court that leveling a sand dune cannot be said to be injurious to the public health. Nor can we imagine even the most enthusiastic environmentalist arguing with a straight face that leveling the dune would leave the populace imperiled or undermine public morality. On the other hand, we find nothing "vague" about the BZA's finding that damage to existing topography is contrary to the "general welfare."

■ As noted above, to set aside the determination of a board which has denied a variance, the reviewing court must find that each of the statutory prerequisites for variance has been established as a matter of law. The evidence supporting each prerequisite must be such that the reviewing court concludes that no reasonable man could fail to accept that prerequisite as proved. The prerequisites to be proved in this case to allow a Development Standards Variance according to the Section 542 of the ordinance were:

1. The approval will not be injurious to the public health, safety, morals and general welfare of the community;

2. The use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner;

3. The strict application of the terms of the Zoning Ordinance will result in practical difficulties in the use of the property. Record at 229.

The Bagnalls' application failed the first prerequisite. The board found that the proposed project would be injurious to the public welfare because, *inter alia*, it involved leveling the dune. To reverse the board's finding, the trial court had to find that no reasonable person could agree with the board's conclusion. *See Metropolitan BZA v. Standard Life Insurance*, 145 Ind. App. 363, 251 N.E.2d 60. This tall hurdle was not cleared. Thus the trial court's findings on this point must be categorized as erroneous, warranting reversal. *See Chico Corp. v. Delaware–Muncie Bd. of Zoning Appeals* (1984), Ind.App., 466 N.E.2d 472. The plans which the Bagnalls submitted necessitated the complete destruction of the dune. They did not present any plans which might have minimized the damage nor did they contend that only the plan presented was feasible. In light of this failure to comply with sections 810 and 110 of the ordinance, the board was justified in denying the request for a variance. The board's conclusion was supported by substantial evidence and thus not clearly erroneous. It should not have been set aside.

### IV. The Takings Claim

■ The Bagnalls also contend that denial of their petition for a variance because their lot size does not meet the 1982 requirements constitutes a taking of their property. We need not reach the "takings" question for two reasons. First, the conclusion that the board lawfully denied the variance because it did not comply with section 810 is sufficient grounds to sustain the denial. Second, as a matter of jurisprudence, we do not decide constitutional issues when a case can be decided on other grounds. *Superior Const. Co. v. Carr* (1990), Ind., 564 N.E.2d 281.

We do not wish to imply, however, that *any* denial of a building permit for the Bagnalls would pass constitutional muster. We simply cannot tell from the record whether the board, if presented with a petition to construct a home under plans which

would protect the dune, would deny the petition solely on grounds that the lot does not conform to the width and square footage requirements of the 1982 ordinance. In this respect, we are reminded of *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), a landmark decision in the law of takings. In *Penn Central*, developers were denied the permits to construct a fifty-story office tower above the historic Grand Central Terminal. The Supreme Court upheld New York City's Landmarks Law and held that an unconstitutional "taking" had not occurred. The Court also noted:

> While the Commission's actions in denying applications to construct an office building in excess of 50 stories above the Terminal may indicate that it will refuse to issue a certificate of appropriateness for any comparably sized structure, nothing the Commission has said or done suggest an intention to prohibit *any* construction above the Terminal ... Since appellants have not sought approval for the construction of a smaller structure, we do not know that appellants will be denied any use of any portion of the airspace above the Terminal.

*Penn Central*, 438 U.S. at 137–138, 98 S.Ct. at 2666.

Like the Court in *Penn Central*, we, too, do not know whether the Bagnalls will be denied *any* use of their property, since they have not sought approval for plans which might mitigate damage to the dune. There is thus no basis upon which to resolve a takings claim.

We reverse the judgment of the trial court and affirm the board.

DICKSON and KRAHULIK, JJ., concur.

DeBRULER, J., concurs in result.

GIVAN, J., would deny transfer.