**EQUICOR DEVELOPMENT, INC., an Indiana Corporation, Thomas E. Goins, and Stephen Roudebush, Appellants–Petitioners,**

v.

**The WESTFIELD–WASHINGTON TOWNSHIP PLAN COMMISSION, Appellee–Respondent.**

No. 29A02–9909–CV–661.

Court of Appeals of Indiana.

July 18, 2000.

Rehearing Denied Sept. 14, 2000.

James P. Moloy, Joseph D. Calderon, Dann, Pecar, Newman & Kleiman, P.C., Indianapolis, Indiana, Attorneys for Appellants.

Brian J. Zaiger, Church, Church, Hittle & Antrim, Noblesville, Indiana, Attorney for Appellee.

## OPINION

ROBB, Judge

Equicor Development, Inc., Thomas E. Goins, and Stephen Roudebush (collectively referred to as "the plaintiffs") appeal the trial court's denial of their Writ of Certiorari by which they sought a court order compelling the Westfield–Washington Township Plan Commission (the "Plan Commission") to grant primary approval of a proposed subdivision plat. We reverse.

*Issue* [1]

The plaintiffs raise the following consolidated and restated issues for our review:

1. Whether there was substantial evidence to support the Plan Commission's denial of Equicor's primary plat; and

2. Whether the Plan Commission's denial of Equicor's primary plat was "arbitrary and capricious."

### Facts and Procedural History

The facts most favorable to the trial court's judgment reveal that Goins and Roudebush own approximately 27.2 acres in Hamilton County. Equicor, an Indiana corporation engaged in the business of residential development, entered into a contract to purchase the property in order to develop a residential community, the Ashfield subdivision. The property is currently zoned SF–3, a medium density residential zoning classification under Section 110 of the Westfield Township Zoning Ordinance (the "Local Zoning Ordinance"). Under this classification, 27.2 acres of property can sustain eighty-two (82) lots.

In late February of 1998, Equicor submitted its application for a proposed primary plat to the Plan Commission for preliminary plat approval to develop the 27.2 acres of property in accordance with Section 110 of the Local Zoning Ordinance which regulates "Cluster Housing Development." The proposed primary plat did not request any special exceptions, uses, variances, or zoning changes. On March 4, 1998, the Technical Advisory Committee reviewed Equicor's primary plat, concluding that the plat needed no changes.

1. The plaintiffs also raise the issue of whether estoppel precludes the Plan Commission from denying Equicor's primary plat. Because we have determined that the Plan Commission's denial of Equicor's primary plat was "arbitrary and capricious," we need not address this issue.

Thereafter, the Plan Commission's staff determined that Equicor's proposed primary plat should be approved by the Commission. On March 9, 1998, the Plan Commission submitted to the town council a proposed amendment to Title 16–Land Use Controls, an amendment which would effectively suspend Section 110 of the Local Zoning Ordinance. Thereafter, the Plan Commission published notice in the local newspaper that it would conduct a public hearing on March 23, 1998, to discuss Equicor's primary plat.

At the public hearing on March 23, 1998, the Plan Commission approved the suspension of Section 110 of the Local Zoning Ordinance which regulated "Cluster Housing Developments." However, the Plan Commission determined that Equicor's proposed primary plat was grandfathered-in and Equicor could proceed to obtain approval of the plat under the Section 110 of the Local Zoning Ordinance. Subsequently, several Plan Commission members and homeowners of property adjacent to the proposed subdivision voiced concern about the density of the Ashfield development. Consequently, the Plan Commission referred the proposed primary plat to the Subdivision Committee for in-depth review. On April 13, 1998, the Westfield Town Council approved the Plan Commission's proposed amendment suspending the availability of the "Cluster Housing Development" under the Local Zoning Ordinance. However, the suspension amendment did not affect Equicor's proposed primary plat because it was currently on file pursuant to the "Cluster Housing Development,"and the amendment only had prospective application.

On April 15, 1998, the Subdivision Committee reviewed the proposed primary plat, recommending that the primary plat be revised to collect green belt space along the lake on the property, to stub a road, and to straighten out angles on a street.

On April 23, 1998, the Subdivision Committee reviewed the recommended changes made to the primary plat by Equicor, then referred the plat to the Plan Commission for final review.

On March 26, 1998 the Plan Commission reviewed the revised primary plat. After some discussion, the Plan Commission voted in favor of a motion denying approval of the revised primary plat.[2] Although each Plan Commission member who approved the motion to deny the primary plat stated his or her reasons on the record at the time of the vote, the Commission did not make any written findings stating its reasons for denying the application. However, the Plan Commission orally informed Equicor that the primary plat was deficient because the number and location of parking spaces was not designated on the plat. On June 24, 1998, Equicor filed a Petition For Writ Of Certiorari with the trial court alleging that the Plan Commission's decision was "arbitrary, capricious, illegal, and contrary to law" on a number of grounds. After conducting a hearing on the petition, the trial court affirmed the Plan Commission's decision. Thereafter, on June 1, 1999, the plaintiffs filed a Motion to Correct Errors with the trial court, a motion which the court later denied. This appeal ensued.

*Discussion and Decision*

### I. Standard of Review

██ When an aggrieved party seeks relief in a trial court from an adverse administrative determination and attacks the evidentiary support for the agency's findings, he bears the burden of demonstrating that the agency's conclusions are "clearly erroneous." *Town of Beverly Shores v. Bagnall*, 590 N.E.2d 1059, 1061 (Ind.1992). A reviewing court may vacate a board or commission's decision only if the evidence, when viewed as a whole, demonstrates that the conclusions reached

2. We note that the Plan Commission vote was seven in favor of denying Equicor's primary plat to one in favor of approving the plat, with one Plan Commission member abstaining. R. 148–49.

by it are clearly erroneous. *Id.* Such a standard naturally requires great deference toward the administrative board by the reviewing court when the petition challenges findings of fact or the application of the facts to the law. *Id.* However, if the allegation is that the commission committed an error of law, no such deference is afforded and reversal by the trial court is appropriate if error of law is demonstrated. *Id.*

■ In reviewing the decision of a zoning board or commission, this court is bound by the same standard as the trial court. *Van Scoik v. Kosciusko County Bd. of Zoning Appeals*, 598 N.E.2d 594, 595 (Ind.Ct.App.1992), *trans. denied.* There is a presumption that determinations of a zoning board, as an administrative agency with expertise in the area of zoning problems, are correct and should not be overturned unless they are arbitrary, capricious, or an abuse of discretion. *Id.* Thus, a reviewing court does not conduct a trial de novo, even though evidence may have been taken to supplement the Writ Of Certiorari and return, and may not substitute its decision for that of the board. *Id.* If the plan commission's decision is correct on any of the grounds stated for disapproval, its decision should be sustained. *Bagnall*, 590 N.E.2d at 1062.

## II. Substantial Evidence

■ The plaintiffs first contend that there was insufficient evidence to support the Plan Commission's decision to deny Equicor's primary plat. We disagree.

Equicor's application requesting primary plat approval for the proposed subdivision was governed by the "Subdivision Control" provisions found in Indiana Code sections 36–7–4–700 through –713. Pursuant to this statute, the local legislative body must adopt an ordinance which regulates the subdivision of land in its zoning

districts and which provides "concrete standards." Ind.Code § 36–7–4–702; *Cundiff v. Schmitt Dev. Co.*, 649 N.E.2d 1063, 1066 (Ind.Ct.App.1995). The purpose of these standards is to provide protection to both developers and landowners and to give "fair warning as to what the local plan commission would consider when reviewing a preliminary plat." *Burrell v. Lake County Plan Comm'n*, 624 N.E.2d 526, 530 (Ind.Ct.App.1993), *trans. denied.* In deciding whether to grant an application for primary plat approval under this scheme, the plan commission is required to "determine if the plat or subdivision qualifies for primary approval under the standards prescribed by the subdivision control ordinance." Ind.Code § 36–7–4–702(a). If, after a hearing, the plan commission determines that the application and plat comply with the standards in the subdivision control ordinance, then it shall make written findings and a decision granting primary approval to the plat. Ind.Code § 36–7–4–707.

■ Section 110 of the Local Zoning Ordinance which governs "Cluster Housing Developments," requires that each development must have two (2) on-site and one-half (½) offsite parking spaces available per 1–3 bedroom unit, excluding garages and carports. R. 59. Furthermore, the Zoning Ordinance provides that:

> [a] primary and final plat for the cluster housing development shall be submitted for approval by the Plan Commission. As further requirements, the primary plat shall include: the number and location of all parking spaces.

R. 60. Equicor failed to designate the number and location of parking spaces on its primary plat. The seven Plan Commission members who voted to deny the primary plat based their decision primarily on the failure of Equicor to list the number and location of the parking spaces.[3] R.

---

**3.** We note that the Plan Commission failed to make written findings regarding their denial of Equicor's primary plat. Regardless of

whether a Plan Commission grants or denies primary plat approval of a proposed subdivision, it is required by statute to issue "written

380. Because Equicor failed to list the number and location of all the parking spaces on the primary plat, we believe that there exists substantial evidence to support the Plan Commission's decision to deny approval of Equicor's primary plat.

### III. Arbitrary and Capricious

The plaintiffs also contend that the Plan Commission's decision to deny Equicor's primary plat was "arbitrary and capricious," despite the existence of substantial evidence to support the Plan Commission's decision. We agree.

The plaintiffs argue that the Plan Commission's decision was "arbitrary and capricious" because the Plan Commission "approved similar subdivision plats under Section 110 even though those plats also failed to literally designate parking spaces on the plats." Brief of Appellants at 10. The Plan Commission essentially argues that it is irrelevant whether or not all the similarly situated primary plats were treated similarly; the only substantive issue before this court is whether there was substantial evidence to support the Plan Commission's decision.

 The action of a Plan Commission may be legislative or administrative, depending upon the particular facts and circumstances. Approval of a plat which meets the requirements of the applicable ordinance constitutes a ministerial as opposed to a discretionary act. *Cundiff*, 649 N.E.2d at 1069; *see also Knutson v. State ex rel. Seberger*, 239 Ind. 656, 659, 157

N.E.2d 469, 471 (1959). In other words, if the proposed plat meets the "concrete standards" of the subdivision control ordinance, then "the approval or disapproval of the plat on the basis of the controlling standards is a ministerial act." *Knutson*, 157 N.E.2d at 471. *See also Cundiff*, 649 N.E.2d at 1069; *Johnson County Plan Comm'n v. RamsHead Corp.*, 463 N.E.2d 295, 304 (Ind.Ct.App.1984). Because the Plan Commission in the present case merely had to determine whether or not Equicor's primary plat conformed to the requirements of the Local Zoning Ordinance, the disapproval of the plat by the Commission constituted a ministerial act.[4]

 Having determined that the Plan Commission performed a ministerial act when it denied Equicor's primary plat, we must now determine whether or not the Plan Commission's decision was "arbitrary and capricious." A rule or decision will be found to be arbitrary and capricious "only where it is willful and unreasonable, without consideration and in disregard of the facts or circumstances in the case, or without some basis which would lead a reasonable and honest person to the same conclusion." *Department of Natural Resources v. Indiana Coal Council, Inc.*, 542 N.E.2d 1000, 1007 (Ind.1989), *cert. denied*, 493 U.S. 1078, 110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990). An examination of the Plan Commission's motive and the disposition of similarly situated applications for primary plat approval before the Commission will

---

findings" which support its decision. Ind. Code § 36-7-4-707. Written findings are necessary to insure adequate judicial review of administrative decisions. *Holmes v. Board of Zoning Appeals of Jasper County*, 634 N.E.2d 522, 525 (Ind.Ct.App.1994). The responsibility to make written findings of fact also "exists independently of statute." *Id.* The Plan Commission members were polled after the vote on Equicor's primary plat, and their responses for voting for or against the approval of the plat were recorded. R. 380. Thus, we are able to adequately review the Plan Commission's decision, even though written findings were not compiled and tendered to Equicor by the Commission. We

advise the Plan Commission to comply with the written finding requirement of Indiana Code section 36-7-4-707 in the future.

4. We note that it is well settled that the courts cannot inquire into the motives of members of a local legislative body when acting in a legislative capacity. *Gardner v. City of Bluffton*, 173 Ind. 454, 89 N.E. 853, 855 (1909); *Town of Schererville v. Vavrus*, 180 Ind.App. 500, 389 N.E.2d 346, 351 (1979). However, because the Plan Commission was acting in an administrative capacity, this court may inquire into the true motive behind its decision to deny Equicor's primary plat.

aid this court in determining whether the Plan Commission acted "arbitrarily or capriciously" when it denied Equicor's primary plat.

In the present case, Equicor submitted a primary plat to the Plan Commission requesting approval to develop the subject property in accordance with Section 110 of the Local Zoning Ordinance. R. 450. Thereafter, the Plan Commission recommended, and the town council approved, an amendment which prospectively suspended Section 110 of the Local Zoning Ordinance. R. 70–1. However, the subject property was not affected by the suspension of Section 110 of the Local Zoning Ordinance because it was grandfathered-in. R. 71. Thus, Equicor was permitted to proceed in obtaining approval of the primary plat by the Commission as SF–3 zoned property, a "Cluster Housing Development."

Subsequently, the Technical Advisory Committee reviewed the primary plat, concluding that no changes were needed.[5] In addition, the Plan Commission's staff concluded that Equicor's proposed primary plat should be approved. The Staff Summary of the Plan Commission provides that:

> [t]his petition for preliminary plat approval in the SF–3 district complies with all applicable zoning standards. There is no legal reason that this petition can be denied. Staff recommends approval.

R. 506. On March 23, 1998, the Plan Commission held a public hearing in which it reviewed and discussed Equicor's primary plat. Because several surrounding homeowners and Commission members voiced concern at the hearing regarding the density of the proposed subdivision, the Plan Commission referred the primary plat to the Subdivision Committee for review.

The Minutes of the April 15, 1998 Subdivision Committee Meeting reveal that several members of the committee were concerned about the density of the proposed Ashfield subdivision. R. 349–351. The committee members were concerned the property could not sustain eighty-two (82) units as permitted under the SF–3 classification, that the houses would be too "packed in." R. 350. At the conclusion of the meeting, the Subdivision Committee recommended several changes to the primary plat in order for it to pass scrutiny by the Plan Commission, changes which did not concern the density of the subdivision.

The Subdivision Committee met a second time on April 29, 1998, to discuss and review Equicor's revised primary plat. The revised primary plat contained all of the changes recommended by the Subdivision Committee at the April 15, 1998 meeting. The Minutes of the second Subdivision Committee meeting reveal that several members of the committee again voiced their concern that the proposed Ashfield subdivision would contain too many units on the property. R. 363–64. However, counsel for Equicor properly informed the Committee at the meeting that the proposed subdivision would contain three (3) lots per acre, the subject property consisted of 27.2 acres, which resulted in the subdivision containing eighty-one (81) lots. R. 363. Thus, the Ashfield subdivision would be in compliance with the SF–3 zoning classification as "Cluster Housing Development." The Chairman of the Subdivision Committee, Ted Englebrecht, informed Equicor at the meeting that the density of the Ashfield subdivision would be the main issue before the Plan Commission, even though it is clear that the proposed subdivision was in compli-

---

**5.** Section 220 of the Local Zoning Ordinance provides that "[i]n order to make the most of opportunities related to developing subdivisions and to conserve time, effort, and expense, subdividers shall be required to consult with the Building Commissioner and other public officials at the monthly Technical Advisory Committee meetings prior to their request for approval of primary plats from the Plan Commission." Appendix to Brief of Appellants at 7.

ance with Section 110 of the Local Zoning Ordinance. R. 364.

Subsequently, on May 26, 1998, Equicor's primary plat was reviewed by the Plan Commission. At the meeting, Plan Commission member Angela Preston, who was a member of the Subdivision Committee which reviewed Equicor's primary plat, stated that:

> I think [the Subdivision Committee] appreciated the progress that we made with the developers, we appreciate a lot of the things that they [Equicor] did to make a better design. At the same time, we have been unhappy with the density from the beginning. I don't think we feel any differently about that. We still feel that this is not an appropriate use of the provision [Section 110 of the Local Zoning Ordinance].... The Committee did not—did not recommend approval because the Committee also shared [Plan Commission member] Mr. [Tracy] Rogers concerns about the density.

R. 107. Thereafter, the Plan Commission engaged in a lengthy discussion regarding the density of the proposed subdivision. The following colloquy occurred between Charles D. Frankenberger, attorney for Equicor, and David Gill and Jim Gapinski, members of the Plan Commission:

> [Mr. Frankenberger]: The only question I have is I don't know what to do with this plat to make it more appealing.
>
> [Mr. Gill]: You don't know yet?
>
> [Mr. Frankenberger]: No.

[Mr. Gapinski]: There was two subcommittee meetings and you went through all of those, you've been before the planning commission twice and you still don't know?

[Mr. Frankenberger]: And we responded to the comments. What is it?

. . .

[Mr. Gapinski]: I can't say anymore. You were there. I believe that night, that first night, the eleventh hour, as was referred to, that you came before us for the first time, that was the night that we suspended cluster housing in Westfield and we made it as a recommendation to the town council, that was the night that you first came in and we talked about it. We talked about the spirit of cluster housing, and the spirit of the cluster housing was to give more green space and give you higher density, but we got more green space, the point of it was not to necessarily maximize acreage –take the gross acreage and divide it and multiply it and come up with the maximum we can get in there, that was never the spirit of cluster housing, and that was discussed the first night you came before the planning commission members, if I'm not mistaken. Do you have those decisions? Now, you don't know what we are looking at.

R. 140–41. Subsequently, the Plan Commission voted to deny approval of Equicor's primary plat, stating that the plat was deficient because the number and location of the parking spaces were not designated on the plat.[6]

---

6. The other reasons the Plan Commission members listed for denying the primary plat include Equicor's failure: 1) to designate the exterior building materials; 2) to apply for a variance for the block length; and 3) concern about health and safety issues. R 381. The trial court in its Order Denying Petition found that "[t]he record indicates that the Commission denied [Equicor]'s final plat based upon its finding that the plat did not designate the number and location of parking spaces and exterior building materials as required by the [Local Zoning] Ordinance." R. 551. The trial court concluded in its Order Denying Petition that:

> [u]pon review of the materials submitted by [the Plan Commission] in its Response to the Writ of Certiorari, this court finds that the denial of the Final Plat based upon a failure of [Equicor] to designate the exterior building materials is not based upon substantial facts and that the record does not support denial of the Final Plat on any of the grounds stated for such denial by the [Plan Commission].... Upon review of the materials submitted by the [Plan Commission]in its Response to the Writ of Certiorari, this court finds that the denial of the Final Plat based upon a lack of designation of

We believe the record is replete with evidence that the true motive behind the Plan Commission's denial of Equicor's primary plat was its disapproval of the density of the proposed subdivision. The density of the proposed subdivision was repeatedly raised and discussed by members of both the Subdivision Committee and the Plan Commission, even though Equicor was in compliance with the written language of Section 110 of the Local Zoning Ordinance which governed "Cluster Housing Development." It is clear the main reason the Plan Commission denied Equicor's primary plat was the density of the Ashfield subdivision. Because the Plan Commission was precluded from denying the primary plat on the basis of the density of the subdivision, the Plan Commission denied the primary plat on the facially valid basis that Equicor failed to designate the number and location of the parking spaces.

We have previously held that if a Plan Commission's decision is correct on any of the grounds stated for disapproval, its decision should be sustained. *Bagnall,* 590 N.E.2d at 1062. Thus, even if the Plan Commission's overriding reason for denying the plat was incorrect, we must affirm the Commission's determination if another reason is valid under the "concrete standards" of the Local Zoning Ordinance. Having already determined that the Plan Commission's reason for denying the primary plat was facially valid, we believe that the Plan Commission's motive behind the decision, standing alone, provides an insufficient basis for this court to overturn the decision of the Plan Commission.

However, Equicor presented additional evidence to the trial court and this appellate tribunal to support its contention that the Plan Commission's decision to deny

Equicor's primary plat was "arbitrary and capricious." The trial court allowed Equicor to supplement the evidentiary record with admissions by the Plan Commission that it had approved two other primary plats under Section 110 of the Local Zoning Ordinance without insisting that the parking spaces be designated on the plat. R. 560, 517–18. Therefore, it is apparent that the Plan Commission's reason for denying Equicor's primary plat operated as a ruse by which it was able to defeat Equicor's exemption from the amendment suspending Section 110 of the Local Zoning Ordinance.

The record is clear that at no time did the Plan Commission advise Equicor that the parking space issue was of concern so that the lack of markings on the proposed primary plat could be remedied. Furthermore, the record is also clear that other plats had been approved without this strict compliance. Thus, it is apparent that the parking space issue played no part in the denial of the plat, but in reality only served to allow the Plan Commission to do what it could not do directly. Therefore, it leads to only one conclusion, that the denial is clearly based only upon an invalid reason, namely the proposed density which complied with Section 110 of the Local Zoning Ordinance.

Although we have determined that there was substantial evidence to support the Plan Commission's decision to deny Equicor's primary plat, we believe that the Plan Commission's decision is "arbitrary and capricious" viewed in light of the true motive behind the Commission's decision, their discriminatory treatment of Equicor's proposed primary plat as compared to similarly situated plats, and the selective enforcement of the parking space provision of Section 110 of the Local Zoning

number and location of parking spaces to be supported by reasonable and sound evidentiary support and therefore must be sustained.

R. 553. Equicor and the Plan Commission addressed in their respective appellate briefs the denial of Equicor's proposed primary plat

on the failure to designate the number and location of the parking spaces. Because the parties have only addressed this reason for the trial court's denial of the primary plat, we decline to examine the merits of the other listed reasons for the Plan Commission's denial of Equicor's primary plat.

Ordinance. Therefore, we hold that the trial court erred in denying Equicor's Petition For Writ of Certiorari.

### Conclusion

Based on the foregoing, we hold that the trial court erred in denying Equicor's Petition for Writ of Certiorari because the Plan Commission's decision to deny Equicor's primary plat was "arbitrary and capricious."

Reversed.

BAILEY, J., concurs.

SHARPNACK, C.J., dissents in part with opinion.

SHARPNACK, Chief Judge dissenting in part

I respectfully dissent. Although I agree with the majority's opinion that there was substantial evidence to support the Plan Commission's denial of Equicor's primary plat, I do not agree that the denial was arbitrary and capricious.

I disagree with the majority for two reasons. First, the Plan Commission was not barred from denying Equicor's primary plat simply because preliminary determinations by the Plan Commission's staff did not find any fault with Equicor's proposed primary plat. Preliminary endorsements of a primary plat do not require a Plan Commission to approve the final plat. *See Burrell,* 624 N.E.2d at 536. Here, the zoning ordinance requires that the final plat be submitted to the Plan Commission for *its approval* and that it include "the number and location of all parking spaces." Record, p. 60. Consequently, the Plan Commission had the power to make the final determination and a duty to reject Equicor's final primary plat because it did not comply with the zoning ordinance. Moreover, Equicor was on notice that the Plan Commission could reject its plan based upon a failure to

include the requisite information on parking even after the Plan Commission's staff found that it was satisfactory because that information was available to Equicor in the ordinance. *See Burrell,* 624 N.E.2d at 537.

Second, I disagree with the majority's contention that we should look to how the Plan Commission handled similar plans that have been submitted to it in order to determine whether its decision in this case was arbitrary and capricious. This court has held that in determining whether an administrative decision is arbitrary or capricious, we do not look to the agency's prior inconsistent decisions in similar situations but, instead, the relevant inquiry is whether the agency had a reasonable basis for its decision in the case at hand.[7] *Indiana Dept. of Natural Resources v. Peabody Coal Co.,* 654 N.E.2d 289, 294 (Ind.Ct.App.1995). Consequently, the relevant inquiry here is whether there was a reasonable basis for the Plan Commission's denial of Equicor's primary plat. *See id.* The Plan Commission's decision did have a reasonable basis: the plan submitted for approval did not comply with the ordinance.

I would affirm.

---

7. I also note that little information has been provided about the Plan Commission's approval of the other primary plats that were not required to designate the number and location of parking spaces.